Bruce Rajala, a Minor, by Hope Rajala, His Mother and Next Friend, et al., Plaintiff-Appellants, v. Joliet Grade School District No. 86, Joliet, Illinois, Defendant-Appellees.

Gen. No. 66–114.

Third District.

March 26, 1969.

■■■■■■■■

Raymond A. Bolden, of Joliet, and Raymond E. Harth, of Chicago, for appellants.

McKeown, McKeown & Fitzgerald, of Joliet, for appellees.

PER CURIAM.

The plaintiff, Bruce Rajala, by his mother and next friend, filed an action in the Will County Circuit Court against the defendant, Joliet Grade School District No. 86, which in substance alleges a violation of the so-called "Armstrong Act" (1967 Ill Rev Stats c 122, § 10–21.3). This Act contains the following provisions:

> "Attendance units. To establish one or more attendance units within the district. As soon as practicable, and from time to time thereafter, the board shall change or revise existing units or create new units in a manner which will take into consideration the prevention of segregation and elimination of separation of children in public schools because of color, race or nationality. All records pertaining to the creation, alteration or revision of attendance units shall be open to the public."

Plaintiff in the action sought a declaratory judgment that the Joliet District had failed to comply with the Armstrong Act. The plaintiff requested that an injunction be issued restraining the school district from keeping school attendance units in violation of the statute. It was alleged that 21 out of 26 school units were either 90% white or 90% negro and that no action to eliminate this situation had been taken.

The Joliet School District filed a motion to dismiss the complaint on the ground that plaintiff had failed to exhaust the required administrative remedy for enforcement of the Armstrong Act. The procedure referred to is set forth specifically in § 22–19 of chapter 122, 1967 Ill Rev Stats. The section referred to was passed in 1961 when the original act was proposed (which later was revised and passed as the Armstrong Act, in 1963).

411

As a result, the particular section was in force two years before the Armstrong Act became law in the State of Illinois. In § 22–19 of the Act referred to it is provided:

> "Complaint of alleged segregation. Upon the filing of a complaint with the Superintendent of Public Instruction, executed in duplicate and subscribed with the names and addresses of at least 50 residents of a school district or 10%, whichever is lesser, alleging that any pupil has been excluded from or segregated in any school on account of his color, race, nationality, religion or religious affiliation, or that any employee of or applicant for employment or assignment with any such school district has been questioned concerning his color, race, nationality, religion or religious affiliation or subjected to discrimination by reason thereof, by or on behalf of the school board of such district, the Superintendent of Public Instruction shall promptly mail a copy of such complaint to the secretary or clerk of such school board."

It is further specified in such section that the Superintendent of Public Instruction is to provide for a hearing and notice to parties in interest. There are provisions for subpoena of witnesses, representation by counsel, examination of records and depositions. A reporter is required to take the testimony. The hearing officer is then to file a report of the hearing with the Superintendent of Public Instruction who then renders a decision in the matter. If the Superintendent of Public Instruction "so determines," he can request the Attorney General to apply to the Circuit Court for an injunction or other relief "to rectify the practice complained of." Section 22–19 also specifies that the provisions of the "Administrative Review Act" apply to decisions by the Superintendent of Public Instruction under said section 22–19.

The trial court allowed the defendant's motion to dismiss the complaint on the ground that plaintiff had failed to exhaust his administrative remedy under the terms of said section 22–19 referred to. During the course of the appeal, it became apparent that a case was pending in the Supreme Court of the State of Illinois which involved two issues which would be determinative of this cause (Tometz v. Board of Education, 39 Ill2d 593, 237 NE2d 498). In that case, a question was raised as to the constitutionality of the Armstrong Act, and an issue was also raised specifically as to whether a plaintiff is required to exhaust the administrative remedies specified in said section 22–19, chapter 122 of the statutes referred to before filing actions for enforcement of the Armstrong Act. The record discloses that both issues of constitutionality and the question of exhaustion of administrative remedy as a requirement, prior to institution of an action of the character now before us, were raised in the Tometz case. The trial judge concluded that the provision of section 22–19 was not an administrative remedy which could be used to enforce the Armstrong Act since the Superintendent of Public Instruction had no power to grant the relief sought. The trial judge based his conclusion on the language of the case of McNeese v. Board of Education, 373 US 668, 10 L Ed2d 622, 83 Sup Ct 1433. Action was deferred in the cause now before us and the parties delayed filing briefs in this court until after disposition of the Tometz case.

In the first opinion which was filed by the Illinois Supreme Court prior to rehearing, the Supreme Court declared that the Armstrong Act was unconstitutional. Following filing of petition for rehearing and other briefs, the Supreme Court of this State held that the Armstrong Act was constitutional (Tometz v. Board of Education, 39 Ill2d 593, 237 NE2d 498). The opinion however, makes no mention of the issue of exhaustion of the administra-

tive remedy either in the majority opinion or in the dissenting opinion in such case.

The appellee school district in this cause contends that the School Code explicitly provides for a complete administrative manner of attacking the discrimination problem and that such procedure is outlined in section 22–19 of the Act herein referred to. It is argued that the Superintendent of Public Instruction has special knowledge in the field and that it was the legislative intent to require that the administrative procedure be followed before there is resort to the courts. A long series of precedents is cited that a party must first use the administrative remedies provided in the Illinois School Code before instituting legal action under the Code. This principle is not disputed by the appellant (Bright v. City of Evanston, 10 Ill2d 178, 139 NE2d 270). It is further contended that the administrative remedy provided for in such code is an effective remedy which can supply the relief requested by plaintiff if his claim was proven to be meritorious. In this connection it is contended that McNeese v. Board of Education, supra, is authority merely for the principle that a party need not exhaust State administrative remedies when a proceeding is instituted for violation of Federal Constitutional rights. It is thus asserted that McNeese is no precedent as to actions involving State Statutes such as the Armstrong Act. It is also pointed out that, in reviewing the history of the passage of the Armstrong Act of 1963, the administrative procedure portion was adopted in 1961, and was originally introduced as a companion bill even though the Armstrong Act did not become effective until two years later due to the problem of wording (a change from "promotion of integration" in the 1961 proposed act to "prevention of segregation" in the 1963 act which was adopted). It is argued vigorously that the legislature intended that the administrative procedure be followed as a required initial procedure since section 10–21.3

414

(Armstrong Act) and section 22–19 were originally considered together. It is also asserted that the administrative procedure is the soundest and fairest way to deal with a segregation problem since the Superintendent of Public Instruction has special knowledge in the area which a court would not normally have.

The appellants in the cause before us, however, contend that (1) it was not the legislative intention that the Superintendent of Public Instruction was to oversee or even coordinate efforts of the various school boards in their efforts to desegregate schools within their particular districts; (2) that nothing in the Armstrong Act or the procedure section suggests the legislative intention to have the Superintendent of Public Instruction coordinate and proceed to assure racial balance throughout the entire State, but that the Act requires that school boards, not the Superintendent, take such affirmative action and that the Superintendent may act only when a complaint is filed and, finally, (3) that the Tometz decision by the Supreme Court of the State of Illinois, which held the Armstrong Act constitutional after two full reviews (in view of the fact that the trial court in that case denied the defendant school board's motion to dismiss on the ground of failure to exhaust the administrative remedy), is authority for reversal of this cause. It is asserted that the decision in the Tometz case, even though the Supreme Court made no mention of any such requirement, obviously was based upon consideration of the total record and, therefore, that there is no requirement that the action with respect to desegregation must first be instituted under the agency of the Superintendent of Public Instruction of this State pursuant to section 22–19. It is argued that practicalities and technical data possessed by the various school districts in their own particular locales is a sounder argument for allowing them to administer any desegregation plan rather than having to place such problems in the hands of the Superintendent

415

of Public Instruction who would not have at his disposal the information as to the unique problems of each district. Appellees contend that the courts are in an even less favorable position to direct desegregation under the Act.

■ The appellants in this cause do not quarrel with the basic principle which requires that administrative remedies which are effective must first be exhausted before direct action is taken in the courts. It is contended, however, that plaintiff need not exhaust administrative remedies when the administrative remedies cannot grant the relief sought by a plaintiff. It is asserted that no administrative remedies were in fact granted by the Act since the Superintendent of Public Instruction has no power to grant the requested relief.

■ Without passing on the merits of the respective contentions, we do not believe we are in a position to ignore the Supreme Court decision in the Tometz case referred to. Unfortunately, the Supreme Court did not express any conclusion specifically on the issue before us. The issue was, however, directly presented to the Supreme Court on the basis of the record which has been made available to us, and, as a consequence, we must presume that since the Supreme Court affirmed the action of the trial court in that case, it agreed with the conclusion that section 22–19 did not provide the exclusive remedy which must be pursued prior to any action in the courts of this State to enforce the Armstrong Act. Our position, however, is such that we must adhere to the Tometz decision and the apparent conclusions of the Supreme Court in that case. If a different conclusion is to be rendered on the issue of requirement of exhaustion of administrative remedies pursuant to the section referred to, such issue will be required to be determined by the Supreme Court.

The order of the Circuit Court of Will County is, therefore, reversed and cause is remanded to such Court with

416

directions to vacate the order of dismissal and to proceed in such cause in accordance with the view expressed in this opinion.

Reversed and remanded with directions.