(No. 33918.—

MICHAEL BRIGHT, Appellee, *vs.* THE CITY OF EVANSTON, Appellant.

*Opinion filed November 27, 1956—Rehearing denied Jan. 23, 1957.*

REX BULLINGER, Corporation Counsel, of Evanston, and JOHNSTON, THOMPSON, RAYMOND, MAYER & JENNER, of Chicago, (FLOYD E. THOMPSON, and PRENTICE H. MARSHALL, of counsel,) for appellant.

GROSSMAN & GROSSMAN, of Chicago, (WILLIAM C. WINES, of counsel,) for appellee.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

Lois Cavanagh brought an action in the circuit court of Cook County against the city of Evanston, seeking a judg-

ment declaring unconstitutional and void the city's zoning ordinance insofar as it affected her property. Michael Bright thereafter purchased the property and was substituted as plaintiff. After hearing evidence the court rendered judgment granting the relief. The city appeals directly to this court, the trial court having certified that the validity of an ordinance is involved and that the public interest requires such direct appeal.

The property is a vacant lot situated near the edge but within the limits of an area which has been zoned for single family dwellings since 1921. Plaintiff desires to erect a seven-story apartment building thereon. Although the surrounding area has been fully developed for many years with homes and commercial buildings, no structure has apparently ever been erected on the present lot. It is located at the southwest corner of Davis Street and Judson Avenue in the city of Evanston, having a frontage of 100 feet along Davis Street, a one-way street running east to west, and 138 feet along Judson Avenue, a north-and-south thoroughfare. The alley west of the lot, between Judson Avenue and Hinman Avenue (the next street west), forms the boundary between the residential district to the east and the commercial zone to the west. On the west side of the alley, less than 100 feet from the subject property, is a seven-story hotel, the general area along and beyond Hinman Avenue being a concentrated commercial district with filling station, garage, multiple-story apartment buildings, stores and other business establishments.

All of the properties immediately adjacent to the present lot are used for residence purposes. There is a frame house between the lot and the alley, occupied by an interior decorator as a residence, and also used for consultation with customers during business hours. All the lots in the neighborhood on the north, south and east of plaintiff's lot are improved with residences. Although a few are rooming houses, several residences of good quality have been built

in recent years, and most of the structures are substantial single-family dwellings. The evidence further shows that the subject property is worth about $12,000 for single-family dwelling purposes and about $50,000 or more for development for apartment building purposes. Expert witnesses on behalf of defendant testified that the proposed use of plaintiff's lot would substantially reduce the value of surrounding family dwellings, while experts for the plaintiff testified there would be no detrimental effect on property east of Judson Avenue.

Although the lot is located less than a block from a highly developed commercial district, it is nevertheless within the boundaries of an area long devoted to single-family dwellings. No doubt a new apartment building would furnish desirable homes where not one but many families could live. The close proximity of the lot to other apartment, hotel, and general commercial facilities, together with the evidence that it has always been vacant and is undesirable as a site for a single-family residence, indicate that its improvement with an apartment building would afford a distinct asset to the community; and the plaintiff argues that in view of such factors and the growth of population it is a poor policy that ignores the demand for modern apartments. But matters of policy, or the wisdom and desirability of a particular restriction, are not within the domain of judicial competence. (*Downey* v. *Grimshaw*, 410 Ill. 21.) Unless it is shown to be arbitrary and unrelated to public health, safety and welfare, the judgment of the municipal authority will not be disturbed.

Although the parties have presented extensive arguments on the issue of validity, we think a determination of whether the ordinance is arbitrary and unreasonable is premature in this case. We agree with the contention that plaintiff cannot challenge the validity of the ordinance in its application to his property without first exhausting an administrative remedy. Under the city's zoning ordinance,

applications to vary a classification as it affects particular property may be made to the board of appeals, which is authorized to recommend variations to the city council in cases of practical difficulties and particular hardship. Neither the present plaintiff nor his predecessor made such application for relief. While no Illinois cases have been cited in which the present question was presented, there have been several decisions in foreign jurisdictions on the effect of a failure to exhaust other remedies before seeking judicial relief from the application of zoning restrictions to particular properties.

In *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 71 L.ed. 303, a comprehensive and complicated zoning ordinance purported to divide the village according to six classes of use districts, three classes of height districts and four classes of area districts, each regulating the land in minute detail and overlapping districts of other classifications. A board of zoning appeals was given the power, in specific cases of practical difficulty or unnecessary hardship, to interpret the ordinance so that substantial justice might be done. Without applying to the board for relief, the owner of a tract of land embraced within several of these districts brought suit for an injunction to restrain, as to plaintiff's property, the enforcement of the ordinance and its various restrictions, limitations and conditions. It was alleged that the ordinance attempts to restrict and control the use of the land so as to confiscate and destroy a great part of its value; that prospective buyers of land for industrial, commercial and residential uses are deterred from buying any part of this land because of the ordinance, and the necessity of burdensome and expensive litigation to vindicate the right to use the land for legitimate purposes; and that the ordinance results in diverting normal industrial, commercial and residential development to other and less favorable locations. A motion was made to dismiss the complaint on the ground that because the plaintiff had made no effort to

apply to the board for relief the suit was premature. The motion was overruled. In upholding the propriety of the ruling the Supreme Court observed (272 U. S. at 386, 71 L. ed. at 310): "The effect of the allegations of the bill is that the ordinance of its own force operates greatly to reduce the value of appellee's lands and destroy their marketability for industrial, commercial and residential uses; and the attack is directed, not against any specific provision or provisions, but against the ordinance as an entirety. Assuming the premises, the existence and maintenance of the ordinance, in effect, constitutes a present invasion of appellee's property rights and a threat to continue it. Under these circumstances, the equitable jurisdiction is clear."

In *Central Trust Co.* v. *City of Cincinnati*, 62 Ohio App. 139, 23 N.E.2d 450, the owner of property in a residential zone, desiring to erect a one-story building for use as a decorator's office and show room, brought suit to enjoin enforcement of the ordinance in so far as it restricted the property to a residence district. No relief had been sought under the city ordinance, whereby "the board" had power to modify strict application of the zoning code in cases of "undue hardship." It was held that where the application of a zoning limitation produces such unwarranted hardships that its enforcement results in a confiscation of property, the owner must first exhaust the administrative remedy before applying to the courts. The decision in *Village of Euclid* v. *Ambler Realty Co.* was distinguished on the ground that there the attack was against the ordinance in its entirety, whereas the case under discussion involved "a charge of specific personal grievance, caused by the application of a perfectly legal ordinance to a particular tract."

In *State ex rel Lieux* v. *Village of Westlake*, 154 Ohio St. 412, 96 N.E.2d 414, an owner of property located in a residence district brought a *mandamus* action to compel the village and its building commissioner to issue a permit

for the construction of a commercial greenhouse thereon. The permit had been refused by the commissioner on the ground that it would violate the zoning ordinance. Although a board of appeals had the power to issue a special permit, in cases where the greenhouse would not be seriously detrimental to the character of the residential district, no application was made for such special permit. Observing that constitutional questions will not be decided until the necessity arises, and that if a special permit had been applied for and received the owner would not have been prejudiced by the ordinance, the court held that until administrative remedies are exhausted an owner is not in a position to question the constitutional validity of zoning restrictions.

In *People* v. *Calvar Corporation,* 286 N. Y. 419, 36 N.E.2d 644, the owner of land in a residence district was convicted of violating the zoning ordinance by using the premises for business purposes. On appeal the owner contended the zoning restrictions unreasonably impaired use of the land and constituted an unconstitutional taking of property without just compensation. The court noted there was nothing in the record to show the owner had sought a temporary permit from the board of appeals, which had authority to vary the application of the zoning regulations in harmony with their general purpose and intent. In holding there could be no unlawful deprivation of property until application was made for a permit and an unreasonable determination was made by the board denying the application, the court observed: "only in proceedings brought to review such a determination, if made, could the court review the action of the Board, or determine whether the ordinance has been administered in manner so unreasonable that enforcement would constitute an unlawful taking of the defendant's property."

In *City of South Bend* v. *Marckle,* 215 Ind. 74, 18 N.E.2d 764, the owners of certain lots zoned for residential

purposes desired to erect a filling station thereon. They presented a petition to the city planning commission and the city council, seeking to have the properties reclassified so as to permit commercial uses. Upon refusal of the petition they brought an action for a declaratory judgment that the ordinance is unconstitutional insofar as it restricts the use of the lots. Although the ordinance provided for modification or variation of its regulations by a board of appeals in cases of practical difficulty or unnecessary hardship, the plaintiffs had failed to appeal to the board for relief. A judgment in favor of the plaintiffs was reversed, the court holding that their complaint should have been directed, in the first instance, to the board of zoning appeals. It was observed that the judgment declaring the entire ordinance unconstitutional as applied to the particular real estate was more than the plaintiffs intended or desired; that their only purpose was to have the lots reclassified as commercial territory so that they might use them for a filling station, but the effect of the trial court's judgment was to relieve them as well of restrictions against glue factories, garbage plants, slaughter houses and other uses prohibited in commercial districts. The court declared that by requiring initial resort to administrative remedies, with constitutional questions as to enforcement decided only on review of the administrative determination, "full protection may be afforded injured property owners without destroying the ordinances, and, too, the anomalous situation is avoided that we find when an ordinance with all of its provisions, good as well as bad, is declared invalid as to a particular parcel of real estate, yet otherwise remains in full force and effect throughout the municipality."

A review of applicable authorities would seem to indicate that where it is claimed the effect of an ordinance as a whole is to unconstitutionally impair the value of the property and destroy its marketability, direct judicial relief may be afforded without prior resort to remedies under the

ordinance. (*Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 71 L. ed. 303; *Dowsey* v. *Village of Kensington*, 257 N. Y. 221, 177 N.E. 427.) Under this rule one who seeks relief from an ordinance on the ground that it is void in its entirety is not obliged to pursue the machinery of the ordinance itself for his remedy.

On the other hand, where the claim is merely that the enforcement or application of a particular classification to the plaintiff's property is unlawful and void, and no attack is made against the ordinance as a whole, judicial relief is appropriate only after available administrative remedies have been exhausted. (*City of South Bend* v. *Marckle*, 215 Ind. 74, 18 N.E.2d 764.) The reason for such a rule is found in the practical difficulty encountered by the city council in foreseeing particular instances of hardship, when general restrictions are initially established for a given area. As the court observed in *Dowsey* v. *Village of Kensington*, 257 N. Y. 221, 177 N.E. 427, "Doubtless it is difficult, perhaps impossible, for a legislative body enacting a zoning regulation to envisage the result of its regulation upon each piece of property which may be affected, or to weigh and adjust each private and public interest that may be involved. The exclusion of business from a particular district may promote the general welfare of the district, yet may destroy the value of a particular plot therein which cannot reasonably be used for residence purposes. * * * Delicate problems are often presented in the division of districts that cannot be solved with justice to all by a general inflexible rule. That difficulty is inherent in any general zoning regulation. Where a restriction imposed by a general rule upon the use of property tends to promote the general welfare, the general rule may be reasonable, even though its strict enforcement might cause unnecessary hardship or damage to the owner of particular property, provided the rule is made subject to variation in its application in case of such hardship. Then the courts will not

refuse enforcement of the general rule, at least until the variation has been refused. In the first instance, the official body intrusted with that function must determine in such case the propriety and the extent of the variation."

In the case at bar the zoning ordinance has made provision for variation in particular cases by application to the board of appeals, which is empowered to make recommendations to the city council with respect thereto. The plaintiff has not seen fit to apply for such a variation. He does not complain of the zoning ordinance as a whole, but claims only that the classification of his lot for residential rather than commercial uses infringes his constitutional rights. Under such circumstances he should apply in the first instance to the board of appeals, and if unsuccessful there he can seek judicial relief. His action for a declaratory judgment without first exhausting his administrative remedies will not lie.

The judgment of the circuit court must therefore be reversed and the cause remanded with directions to dismiss the complaint.

*Reversed and remanded, with directions.*