(No. 36857

MARIE WESTFIELD, Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed Nov. 30, 1962.—Rehearing denied Jan. 28, 1963.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and ALLEN HARTMAN, Assistant Corporation Counsel, of counsel,) for appellant.

HOWARD B. BRYANT and MAURICE J. NATHANSON, both of Chicago, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is a declaratory judgment action wherein plaintiff sought to have the use of her property declared a legal nonconforming use, or a lawful use under the Chicago zoning ordinance. In the alternative, she prayed that the ordinance be declared void as to her property. The defendant counterclaimed and prayed that plaintiff be enjoined from operating the property as a multiple dwelling. The city appeals from a judgment holding the ordinance void as applied to the subject property.

The lot is improved with a three-story, brick and frame, 13 to 17 room residence and a four-car brick garage to the rear. It is located at 5022 S. Greenwood Avenue and has a frontage of 50 feet and a depth of 208 feet. It was occupied as a single-family residence .for about 30 years prior to 1948. In that year a prior owner converted it into apartments by constructing additional kitchens and bathrooms and making other interior changes. Since this was done subsequent to the 1942 zoning ordinance, it does not constitute a nonconforming use. In 1954 the property was sold

to plaintiff's predecessors in title for $25,000, who in turn, sold it to her under an installment contract for $30,329. The building is now divided into an apartment and a single room on the first floor, two apartments on the second and one on the third floor. At one time there was also a basement apartment occupied by a maintenance man.

In 1957 plaintiff received notices that she was required to restore the premises to single-family use and demanding that she discontinue multiple-family occupancy. This was followed by a command to appear before the compliance board and a threat to bring suit against her should she fail to reconvert to single-family occupancy.

The city seeks to invoke the doctrine enunciated in *Bright* v. *City of Evanston,* 10 Ill.2d 178, and subsequent cases, that an owner must apply for appropriate local relief (administrative or legislative) before challenging the validity of an ordinance as applied to his property. This is based upon the failure of the plaintiff to seek an amendment to the ordinance prior to filing suit.

The *Bright* rule is, of course, an expression of judicial policy aimed at providing the local authority an opportunity to correct error and to settle disputes locally before there is judicial intervention and thereby facilitate a possible early disposition of the dispute, but where it is apparent that the local authority will not change the zoning regulation without judicial intervention, it would be useless to require a property owner to apply to the local authority for a change. The zoning regulation here involved is a part of an urban renewal plan which, according to the voluminous record in this case, was preceded by a vast amount of planning and study. After approval of such a comprehensive plan, it seems obvious that the local authority would be most reluctant to change the regulation. The full vigor of the *Bright* rule and its purposes is not applicable, therefore, where the zoning regulation is a part of an urban renewal

plan. In addition, there is here the city's demands and threats of suit which apparently would have been carried out. We are of the opinion that the trial court properly proceeded to hear the controversy. Cf. *County of Lake* v. *MacNeal,* 24 Ill.2d 253.

Zoning in the immediate area is as follows. The southerly part of the block within which the subject property is located and the two blocks further south are zoned R-4. The same classification prevails to the east (except for the northwest portion of the block immediately east), and to the southeast and southwest. The northerly portion of the block, including plaintiff's property on the south edge, and the next several blocks to the north are zoned R-1.

The uses to which the property in plaintiff's block is devoted are as follows: To the south on Greenwood Avenue is a large residence converted to a military academy behind which is a school building and to the south of which is a residence used in connection with the academy. Next south is a single-family type residence used as a church located at the intersection of Greenwood and Hyde Park Boulevard. Proceeding to the west, the north side of Hyde Park to Ellis Avenue is fully developed with apartment buildings. The east side of Ellis extending north is occupied by three single-family dwellings, then a Protestant children's home occupies about the middle one-third of the west one-half of the block, and two single-family dwellings lie between the home and 50th Street. Proceeding east along 50th Street there is one single-family dwelling. On the west side of Greenwood north of the subject property are three single-family dwellings.

In the block directly east, approximately the southwest one-quarter is occupied by Temple Isaiah and its school. North of the Temple are three single-family dwellings, the one at the northwest corner being used as a convent for the Dominican Mission Sisters. The balance of the block is de-

voted to multiple-family uses. The blocks to the north and northeast are zoned for and occupied by single-family dwellings.

Following the Federal Housing Act of 1949, the legislature in 1953 enacted the Illinois Urban Community Conservation Act, (Ill. Rev. Stat. 1953, chap. 67½, par. 91.8,) which designated a conservation area as not yet a slum or a blighted area but which may become one. A conservation board was created under the act by the city of Chicago to operate within its boundaries. The board drew up a plan for the area within which the subject property is located (know as the Hyde Park-Kenwood Urban Renewal Plan) and a recommendation as to zoning or rezoning which it thought was required. The city council adopted the plan and thereafter the board could exercise powers granted to it, including the right of eminent domain.

The city argues that judicial review of building restrictions and zoning based upon the findings of the board is much more limited than review of restrictions and zoning by a municipality of areas not within an urban renewal district. Without reviewing in detail the Federal and foreign jurisdiction cases cited, it seems that they deal primarily with the question of whether a plan is to the public interest, and that the right to exercise eminent domain is reviewable only where the findings are fraudulent or capricious. In approving the Urban Community Conservation Act, (*People ex rel. Gutknecht* v. *City of Chicago,* 3 Ill.2d 539,) we said at page 549: "If the action taken by said council in adopting a conservation plan be deemed unreasonable, oppressive, capricious or discriminatory, resort to the courts is available." Thus, a conservation plan is not sacrosanct, and the right to test the validity of zoning regulations included in such a plan is not destroyed, although the comprehensive study and planning involved in the creation of an urban renewal district is certainly a factor entitled to special consideration.

There is the presumption of validity of a zoning ordi-

nance and one who attacks such an ordinance has the burden of overcoming that presumption with clear and convincing proof that the ordinance as to him is arbitrary and unreasonable, and is without substantial relation to the public health, morals, safety and welfare. (*Cosmopolitan Nat. Bank of Chicago* v. *City of Chicago,* 22 Ill.2d 367; *La Salle Nat. Bank of Chicago* v. *County of Cook,* 12 Ill.2d 40.) The presumption of validity is overcome, however, when it is shown that there is no reasonable basis in public welfare requiring the restriction and that there is a resulting loss to the property owner. Where the gain to the public is small as compared to the hardship imposed upon the owner, no valid basis for the exercise of police power exists. (*Marquette Nat. Bank* v. *County of Cook,* 24 Ill.2d 497, 502.) The application of these well known principles necessitates a consideration of the effect upon both the individual owner and the public.

The single-family dwellings in this area are of a very large, old-fashioned three-story type built for large families who had servants to maintain them. Economic and social changes have left their mark, particularly as to those on the periphery of the R-1 district. The subject property was converted to multiple-family use almost 10 years before the demand that it be reconverted to single-family occupancy, and it has been so used since its conversion.

We first examine the evidence from the standpoint of hardship to the plaintiff. She purchased the property for about $30,000. A witness for the city placed a valuation of $18,000 whether occupied as at present or for single-family occupancy, while plaintiff's witness fixed the value at $18,500 for single-family use and $36,500 for its present multiple-family use. This evidence, coupled with the amount of the last two *bona fide* sales indicates that plaintiff would suffer a considerable capital loss if she is forced to reconvert. Furthermore, the undisputed evidence places the cost of reconversion at $2000.

There would also be a loss in income. The city seeks to minimize this factor by pointing out that the net income was only $235.83 in 1955 while the net losses for 1956 and 1957 were $1004.39 and $1496.67, respectively. This argument overlooks several considerations. First, she is charged with ¼ of the operating cost because of her personal occupancy, which amounted to $1358.13 in 1956 and $1522.22 in 1957. From a cash standpoint these deficits are practically overcome by annual depreciation on the rented portion of $1357 and $1370.50 for these respective years. Second, her gross income of $3070 per year would be entirely eliminated but there would be no corresponding reduction in maintenance and overhead. Major items of overhead such as interest, taxes, insurance and repairs would remain near the present level, and while there would be a reduction in the cost of utilities and fuel (assuming that they are now furnished although the record does not so show), they could not be entirely eliminated. A resume of these figures indicates that it would not be economically feasible for this widow to occupy the premises solely as her home.

In short, to enforce the zoning classification against plaintiff's property would work a real and substantial hardship upon her, whether she sells or retains the property.

We turn to the possible detriments to the public by permitting the continuation of this multiple-family use. Usually in these intensive use cases we must evaluate the decrease in value of adjoining properties from opinion testimony, but that is not the case here. This property has been occupied as multiple-family for many years so that any decrease in values would now be apparent. As we have heretofore pointed out, there is no proof that properties in the area have diminished in value.

The very real hardship and financial loss to plaintiff in this particular case by the enforcement of the R-1 classification leads us to conclude that, on this record, the ordinance is unreasonable and confiscatory.

We find no error in the judgment of the circuit court of Cook County holding the zoning ordinance void as to plaintiff's property and ordering that she be permitted to continue its use for multiple-family purposes as she now does, subject to the restrictions imposed by the R-4 provisions of the Chicago zoning ordinance, and such judgment is affirmed.

*Judgment affirmed.*