NORTHWESTERN UNIVERSITY, Plaintiff-Appellant, *v.* THE CITY OF EVANSTON *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-198

Opinion filed September 23, 1977.—Supplemental opinion filed on denial of rehearing December 23, 1977.

Michael C. Weston and James M. Perry, both of Evanston, and James W. Kissel, Frederic F. Brace, Jr., and Shalom L. Kohn, both of Sidley & Austin, of Chicago, for appellant.

Jack M. Siegel, Corporation Counsel of the City of Evanston, of Chicago, for appellees.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Northwestern University (University), brought a complaint

for declaratory judgment against defendant, City of Evanston (City), in which the University sought a declaration that section VII.B.U2(a) of the Evanston zoning ordinance is unconstitutional on its face and as applied by the City to prevent the University's use of its property for professional athletic events or other commercial purposes. The trial court granted the City's motion to dismiss the cause for failure to exhaust local and administrative remedies.

The University appeals, contending: (1) the University has fully exhausted its administrative remedies; (2) further attempts to seek local relief would be futile; and (3) exhaustion is not required since the ordinance is unconstitutional on its face. We reverse and remand.

The history of the dispute between the University and the City over the ordinance is set forth in the University's complaint. The City's motion to dismiss the complaint admits all facts well pleaded. (*O'Fallon Development Co. v. Ring* (1967), 37 Ill. 2d 84, 224 N.E.2d 782; *Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 347 N.E.2d 396; see also *Village of Justice v. Jamieson* (1955), 7 Ill. App. 2d 113, 129 N.E.2d 269.) The pertinent facts are summarized.

Northwestern University is the owner of a 55,000 seat auditorium (Dyche Stadium) constructed in 1926, and an 11,226 seat fieldhouse (McGaw Hall) built in 1952. In 1960, the City of Evanston comprehensively amended its zoning ordinance to create a university district (U-2) under which it classified Dyche Stadium and McGaw Hall. Section VII.B.U2(a) of the ordinance specified the permitted uses in such districts, and excluded the use of any building, stadium or facility for commercial purposes.

In early 1970, the University and the Chicago Bears Football Club (Bears) agreed that the Bears football team would play a professional football game against the Philadelphia Eagles, another professional football club, in Dyche Stadium on September 27, 1970. In July 1970 the Bears filed a complaint in the circuit court seeking preliminary and permanent injunctions to prevent the City from interfering with the game. The circuit court granted a preliminary injunction in August 1970, and noted that any distinction prohibiting professional athletics would be unreasonable, arbitrary and discriminatory. While that order was being appealed, the Eagles game was played. The appeal was thereafter dismissed as moot.

Subsequent to the circuit court ruling in the Bears case, the City amended the zoning ordinance to its present form, which specifically refers to professional athletics. Section VII.B.U2(a) now lists permitted uses in a U-2 district as follows:

> "Colleges, universities and theological schools including their buildings owned or leased for administrative and faculty offices,

classrooms, laboratories, chapels, auditoriums, lecture halls, libraries, student and faculty centers, athletic facilities, dormitories, fraternities, and sororities, but not including colleges or trade schools operated for profit and not including the use of any building, stadium or other facility for professional athletics, sports or games, or other commercial purposes."

The City also amended section III of the zoning ordinance to add the following definition:

"COMMERCIAL PURPOSE. An occupation, employment or enterprise which is carried on for profit by the owner, lessee or licensee, except for activities carried on by a not-for-profit organization, which utilizes the proceeds of such activities solely for the purpose for which it is organized."

Thereafter the City, in 1970 and again in 1971, sought to enjoin the University from permitting professional tennis matches to be held in McGaw Hall. Both cases were subsequently dismissed by agreement and without prejudice.

In March 1971, the University filed an application before the Evanston Zoning Board of Appeals for a zoning variation to permit professional tennis matches in McGaw Hall. In April 1971, a hearing was held and the Board recommended to the City Council that a variation be granted under certain narrow conditions. The recommendation has been pending on the City Council's agenda for nearly six years, and the City Council has never acted upon it.

In 1974, the Evanston Zoning Amendment Committee received a reference from the City Council to consider amending the provisions of section VII of the zoning ordinance relating to University districts. The reference stated that "the language of the current ordinance does not reflect the activities that the City allows to take place in University Districts." It further stated that "the City Council wishes to update this section of the Zoning Ordinance by bringing it into conformance with actual intentions and present practice." Hearings were held in 1974. The matter is still pending unresolved before the Zoning Amendment Committee which has made no recommendations to the City Council, and the City Council has taken no further action thereon.

On September 5, 1975, the University filed a complaint for declaratory judgment seeking a declaration that the zoning ordinance was unconstitutional and that a basketball game between two professional teams, the Chicago Bulls and the Milwaukee Bucks, be permitted to take place at McGaw Hall on October 18, 1975. The game was cancelled, and on December 8, 1975, the complaint was dismissed without prejudice. The circuit court then noted that the University would be entitled to return to court for relief if the local zoning proceedings did not proceed

"sufficiently expeditiously." The reference was to proceedings instituted by the University on November 21, 1975, wherein it had filed a petition for zoning amendment with the Evanston Zoning Amendment Committee and a separate application for variation with the Evanston Zoning Board of Appeals. The proceedings before the local bodies are set forth later.

In March 1976, the Zoning Board of Appeals issued subpoenas for discovery of documents and for depositions at the request of certain neighborhood residents, and informed the University that its application for variation would not be heard until the subpoenas were complied with.

On April 5, 1976, the Chicago Sting, a professional soccer team, sought permission from the University to use Dyche Stadium for a soccer game to be played in June 1976. The University filed the instant complaint for declaratory judgment on April 19, 1976, seeking a declaration that section VII.B.U2(a) is unconstitutional. The complaint further prayed that the subpoenas issued by the Zoning Board of Appeals be quashed. The City answered, and a trial on the merits of the declaratory judgment action was set for November 1976. On July 15, 1976, the subpoenas were quashed by the circuit court which found that the Board had no authority to issue discovery subpoenas, and further that the subpoenas had not been served in accordance with the applicable requirements. In the meantime, the Sting game had been cancelled.

In September 1976, pursuant to the proceedings hereinafter set forth, recommendations were made to the Evanston City Council by the Zoning Amendment Committee which recommended denial of the University's petition for zoning amendment, and also by the Zoning Board of Appeals which recommended denial of the application for zoning variance. The City Council approved both reports and denied the petition· and the application.

In November 1976, the City presented a motion to dismiss the University's complaint in the circuit court for failure to exhaust local and administrative remedies. The City filed a memorandum of law in support of its motion. Attached to the memorandum as exhibits were transcripts of the proceedings before the local zoning bodies, and a "Statement of Facts" which the University had presented there. The proceedings before the local zoning authorities follows.

*Zoning Amendment Committee*

The University filed a petition for amendment with the Zoning Amendment Committee on November 21, 1975, wherein it sought an amendment of the Evanston zoning ordinance to include the following as permitted uses in U-2 districts:

"* * * professional or amateur athletic contests, Fourth of July

> Shows, circuses, carnivals, home shows, horse shows, speeches by notable persons, meetings, convocations, commencements, entertainments, expositions and exhibitions."

The University alleged that this recital of events corresponds to the type of event that the City had previously permitted to take place in Dyche Stadium and McGaw Hall. An alternative version of the amendment suggested by the University would have limited the additional uses cited above to U-2 districts containing stadia with more than 54,000 seats and fieldhouses with over 11,000 seats.

Public hearings were held on the petition at which counsel for the University were present. Objectors appeared, individually and by counsel, and presented testimony and documentary evidence. At the first hearing, held on May 6, 1976, the Committee received a "Statement of Facts" presented by the University. The University stated that the purpose of this procedure was to present all the relevant facts to the Committee, a part-time body which meets one evening a month, and to give the Committee an opportunity to request any supporting documentation or evidence it deemed necessary. At the hearing, counsel for the University told the Committee:

> "* * *[T]he statement of facts that I just provided you * * * sets forth our case on the facts. Procedurally the problem is that we have * * * a two week Law Suit, and I spoke to * * * [an attorney for objecting neighbors], and obviously you can't start a two week trial at 8:00 at night, and * * * we agreed that I would present this memorandum to this Committee so that you could look it over and if you wanted testimony or documents with respect to some particular aspect of it or more than one particular aspect of it, you could request that of the University and we would supply it. That's the purpose of this document."

At the May 6 hearing a request was made for a schedule of past events, and the University said that it would comply. The Chairman of the Committee then stated:

> "I believe we'll have most of the information we—from the schedule of events for five years, will give us practically everything we need."

The University contends that all information requested by the Committee was furnished on June 9, 1976.

Counsel for the University advised the Committee at a hearing on July 1, 1976:

> "* * * but as I understand the idea of this petition is to give this Community a chance to correct the unconstitutionality of the ordinance, before a court does so. And that's why we're here, and

as I said last time, that's our position, the ordinance is unconstitutional. And we want you to rewrite it in a fashion that would render it constitutional."

At a hearing on September 2, 1976, counsel for the University stated: "* * * We have previously submitted back in May, a factual memorandum setting forth the basis for our case, and at that time as the record shows we invited requests for additional information or supporting information, we had such requests and we responded to them. I spoke with * * * [an attorney for objecting neighbors], I believe, this afternoon and told him that we would, in order to expedite * * * we would stand on the facts stated there as our case and not call witnesses, and we would keep our cross examination of opposing witnesses as brief as possible in order to conclude this hearing promptly."

At that point a member of the Committee submitted that an attorney's remarks were not to be considered as facts unless he testified under oath. In response, counsel for the University stated:

"Well, I believe what you say is correct in trial, in courts, but in this case, we've submitted our, not only attorney's statements but a great deal of supporting data, all that was requested. We could, * * * if this group had the patience to put in all the evidence at great length it would be put in a case before * * * [the circuit court]. But that would consume many weeks of time and this group is only a part time body. * * *. I can represent to this group, however, that the factual statements in our memorandum is also our case before * * * [ the circuit court.] * * * [That case] simply consists of testimony and documentary evidence tending to prove the facts that we put into the statement. The statement is a summary of our case * * *."

No request for additional material was made. At the conclusion of the September 2 hearing the Committee voted to recommend that the City Council deny the University's petition for amendment. The Committee incorporated into its recommendation a finding that the University "presented no evidence in support of the petition," since "the petition and position paper consist of allegations, conclusions and opinion," and "do not constitute evidence."

## Zoning Board of Appeals

On November 21, 1975, the same date that it filed its petition before the Zoning Amendment Committee, the University also filed an application for variation with the Evanston Zoning Board of Appeals. Public hearings were held on the application at which the University and objectors

appeared. The first hearing before the Board was scheduled for February 17, 1976, and at that time the University appeared with two witnesses. The Board, however, continued the case to April 20, 1976.

In the interim, however, the Zoning Board of Appeals on March 17, 1976, issued six discovery subpoenas against the University. When the University did not comply, it was informed by the Board that the variation matter would not be heard until the subpoenas were complied with. Meanwhile, the University on May 13, 1976, presented to the Zoning Board the statement of facts that it had presented to the Zoning Amendment Committee. The University requested that the matter be heard in June or July; instead the hearing was set for September 21, 1976. The University also offered to present the additional material which the Zoning Amendment Committee had requested. The Board declined the additional material on the basis that the University had to present its case before the Board independently of the proceedings before the Zoning Amendment Committee.

On September 21, 1976, the Board recommended that the City Council deny the University's application for a variation. In its report the Board found that there was "limited evidence presented," and concluded that the evidence "failed to establish any unique physical characteristics for the property" as required by the zoning ordinance, because "the regulations presently governing the subject property would apply with equal weight to any other stadium or fieldhouse erected by any other college or university within the same zoning classification." It is undisputed that Dyche Stadium is the only stadium in university districts in Evanston.

On December 21, 1976, the trial court entered an order which sustained the City's motion to dismiss the University's complaint for failure to exhaust local and administrative remedies. The instant appeal is from this order.

OPINION

The University argues that through its efforts before the Zoning Amendment Committee and the Zoning Board of Appeals outlined above, the University has fully exhausted its remedies before the local zoning bodies. The City contends, however, that the University's presentation was merely a token effort to comply with the exhaustion requirement, and that it was not a good faith effort since the University presented "no evidence" before these bodies.

■■ ■ When a landowner seeks relief from the enforcement or application of a zoning ordinance, but does not attack the ordinance as a whole, judicial relief is appropriate only after available administrative remedies have been exhausted. (*Bright v. City of Evanston* (1956), 10 Ill.

2d 178, 139 N.E.2d 270.) The *Bright* rule of exhaustion of administrative remedies, however, is not jurisdictional. (*Fiore v. City of Highland Park* (1966), 76 Ill. App. 2d 62, 221 N.E.2d 323.) It is the expression of a judicial policy which recognizes that zoning is primarily a local matter, and it provides the local zoning bodies with an opportunity to settle disputes at that level and avoid judicial intervention. *Westfield v. City of Chicago* (1962), 26 Ill. 2d 526, 187 N.E.2d 208; *Bass v. City of Joliet* (1973), 10 Ill. App. 3d 860, 295 N.E.2d 53.

■■ In the instant case the University presented a detailed statement of its position to both local zoning bodies. Where an amendment proceeding and a variation proceeding are before the same body, a landowner need not pursue both remedies. (*Herman v. Village of Hillside* (1958), 15 Ill. 2d 396, 155 N.E.2d 47; see also *Reilly v. City of Chicago* (1962), 24 Ill. 2d 348, 181 N.E.2d 175.) In order for the University to fulfill the exhaustion requirement in the instant case, it would have been necessary to seek relief from *either* the Zoning Amendment Committee or the Zoning Board of Appeals, since the Evanston City Council ultimately had to pass on both matters. The University however chose to present its case before both zoning bodies.

The University told both bodies that the statement of facts was specifically designed as a recitation of all the facts which the University intended to present in court in support of its claim that the ordinance was unconstitutional. In addition, the University informed each body that it would present such additional material as it requested, and the University complied with such requests. The matter was clearly before both bodies. The University represented to the Zoning Amendment Committee that it proceeded in this manner because the Committee is a part-time body which meets one evening a month, and that the University's case formally presented in court would require a two-week trial. We find that the University presented its position to the local zoning bodies and gave them ample opportunity to act on its requests.

Where such an opportunity has been provided, a court will not scrutinize the nature of the evidence presented to the local zoning authorities, since as a practical matter the substance of what is presented before a zoning body is of a different nature than the evidence required to sustain the burden of proof subsequently in a court of law. (*Fiore v. City of Highland Park.*) An action challenging the constitutionality of a zoning ordinance is not an administrative review of an agency decision, but a separate action in which a court will take such independent evidence as the parties seek to introduce. (See *Broccolo v. Village of Skokie* (1972), 14 Ill. App. 3d 27, 302 N.E.2d 74.) Moreover, a proposed change in a zoning ordinance is a legislative question; and when a local body acts pursuant to a grant of authority to conduct a hearing and report on such a legislative

matter, the proceedings are not limited to the formality of a legal hearing. (*Village of Justice v. Jamieson* (1955), 7 Ill. App. 2d 113, 129 N.E.2d 269.) We therefore reject the City's contention that because the material presented before these recommendatory bodies did not meet judicial standards of evidence, the University presented "no evidence" before these bodies.

■■ Further, it is evident that it would serve no useful purpose for the University to return to the local authorities for relief. The history of the litigation surrounding this ordinance clearly demonstrates what the City itself has characterized as a "longstanding intent of the City Council to prohibit professional athletics from an area zoned as a University District." In light of this history we conclude that the University has fully exhausted its remedies before the Evanston zoning authorities and that further endeavor before these bodies would be futile.

The order of the trial court dismissing the University's complaint for failure to exhaust local and administrative remedies is therefore reversed and the cause is remanded to the circuit court for a determination of the constitutionality of the ordinance and further proceedings not inconsistent with this opinion.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE MEJDA delivered the opinion of the court:

The city of Evanston has petitioned for a rehearing of this court's determination that Northwestern University has exhausted its local and administrative remedies, urging that "there was no evidence produced in any meaningful manner" before the local zoning bodies. We disagree.

■■■ As a general rule, evidence to which no objection is made is properly in the case for all purposes, and even incompetent evidence admitted without objection is entitled to its natural probative effect. (*Bunch v. Rose* (1973), 10 Ill. App. 3d 198, 293 N.E.2d 8.) Moreover, strict rules concerning the admissibility of evidence do not apply in proceedings before committees of laymen. See *Mitchell v. Sackett* (1960), 27 Ill. App. 2d 335, 169 N.E.2d 833.

The University presented its "statement of facts" to each zoning body, and the statement was received without objection. In addition to the statement, the university offered to and did provide information as requested. In proceedings before the Zoning Amendment Committee on July 1, 1976, a member of the committee staff identified for the record

"quite a bit of new documentation," which included a "fairly large packet of materials" submitted by the university.

We would further note that at the hearings before the local zoning bodies, area residents testified and an attorney representing objectors read "notes from witnesses unable to attend." The attorney also presented for the record certain documents which were among 6000 documents purportedly obtained through court process. Among these were a letter from a person affiliated with the university's traffic institute, a report from the minutes of a staff meeting held by the president of the university, a document from the university's planning department, and letters of inquiry into the use of the facilities by several entities engaged in private enterprise. The attorney also tendered "for the file" two separate series of area photographs, newspaper articles, an impact statement prepared by a private entity, and a letter from a past president of the university.

■■■ Unlike administrative review of a ruling by a zoning board, we are not here concerned with the quality or nature of the evidence received nor the correctness of the ruling. The issue confronting this court is whether under the circumstances of this case reasonable effort has been made to provide the local authorities with an opportunity to act on the matter. (See *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 167 N.E.2d 406.) Considering the proceedings and the presentation before the boards as a whole, we cannot agree with the city that no evidence was produced in any meaningful or good faith effort to exhaust local administrative remedies.

The petition for rehearing is denied.

LORENZ and WILSON, JJ., concur.