(No. 50383.—

NORTHWESTERN UNIVERSITY, Appellee, v. THE CITY OF EVANSTON, Appellant.

*Opinion filed December 4, 1978.*

Jack M. Siegel, corporation counsel, of Chicago, for appellant.

Michael C. Weston and James M. Perry, of Evanston, and James W. Kissel, Frederic F. Brace, Jr., and Shalom L. Kohn, of Sidley & Austin, of Chicago, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Plaintiff, Northwestern University, brought suit against the city of Evanston in the circuit court of Cook County seeking a declaration that a city zoning ordinance forbidding commercial activity, including professional sports, in the university district was unconstitutional. The circuit court dismissed the complaint for failure to exhaust local and administrative remedies. The appellate court reversed (55 Ill. App. 3d 609), finding that, in light of the history of dispute over the ordinance, Northwestern "has fully exhausted its remedies before the Evanston zoning authorities and *** further endeavor before these bodies would be futile." (55 Ill. App. 3d 609, 618.) We granted leave to appeal and we now reverse.

The zoning ordinance challenged applies to the university district (U—2), an area which includes Northwestern's 55,000-seat Dyche Stadium and 11,226-seat McGaw Hall. Uses not permitted in the U—2 district include "the use of any building, stadium or other facility for professional athletics, sports or games, or other commercial purposes." In 1970, a predecessor provision

which also forbade the use of a stadium for commercial purposes was in effect. At that time, Northwestern and the Chicago Bears Football Club reached an agreement whereby the Bears would play a professional football game with the Philadelphia Eagles in Dyche Stadium on September 27, 1970. Fearing difficulties because of the zoning provision, the Bears brought suit against Northwestern and Evanston and obtained a temporary injunction from the circuit court of Cook County which permitted the game to be played. The appeal of that order was dismissed as moot because the game had already taken place.

Also in 1970, and again in 1971, Evanston sought to enjoin the university from permitting professional tennis tournaments to be held in McGaw Hall. Both tournaments were held and both lawsuits were dismissed by agreement and without prejudice.

In March 1971 Northwestern filed an application with the Evanston zoning board of appeals, requesting a variation for the purpose of hosting future professional tennis matches. The board recommended to the Evanston city council that the variations be granted but the council did not act on the recommendation.

After the present ordinance, which more specifically forbids professional athletics in the U—2 district, became effective, Northwestern entered into an agreement with the Chicago Professional Sports Corporation whereby the Chicago Bulls and Milwaukee Bucks, professional basketball teams, would play a game in McGaw Hall on October 18, 1975. Northwestern then sought a declaratory judgment in the circuit court holding the ordinance unconstitutional. The game was cancelled, and the complaint was dismissed without prejudice on December 8, 1975. The court noted that Northwestern might again seek judicial relief if the local bodies did not proceed "sufficiently expeditiously" on the application and petition hereinafter described.

On November 21, 1975, Northwestern had filed an application for a variation with the zoning board of appeals seeking authority to use Dyche Stadium and McGaw Hall for professional athletic contests or other commercial purposes. The university also filed a separate petition for a zoning amendment with the Evanston zoning amendment committee, asking that the zoning ordinance be amended to permit a wide variety of commercial and noncommercial activities, including "professional or amateur athletic contests, Fourth of July shows, speeches by notable persons, meetings, convocations, commencements, entertainments, expositions and exhibitions." On April 5, 1976, before Northwestern's case was heard by either the zoning board of appeals or the zoning amendment committee, officers of the Chicago Sting Soccer Club, a professional soccer team, approached Northwestern with a proposal to play a game in Dyche Stadium on June 13, 1976. Northwestern filed the present complaint on April 19, 1976, seeking a declaration that the use restrictions on the U–2 district are unconstitutional insofar as they do not permit professional athletics or other commercial uses. The complaint also asked the court to enjoin Evanston from interfering with the scheduling, planning or playing of the Sting game on June 13. Subsequent to the filing of the complaint, the Sting game was cancelled.

The zoning amendment committee held public hearings on Northwestern's petition on May 6, July 1, and September 2, 1976. Counsel for the university presented no witnesses, but rather submitted a document he characterized as a "statement of facts." The document was in fact a memorandum that consisted largely of arguments for the unconstitutionality of the ordinance which counsel intended to submit to the circuit court in this then-pending suit. The university offered to produce additional material on request and alleges here that it did furnish a

schedule of past events in the stadium and fieldhouse when asked to do so by the committee. At the conclusion of the September 2 hearing, the committee voted to recommend that the Evanston city council deny the university's petition for amendment. The committee noted that Northwestern had "presented no evidence in support of the petition," because "the petition and position paper consist of allegations, conclusions and opinion," and "do not constitute evidence."

The zoning board of appeals held a public hearing on Northwestern's application for a variation on February 17, 1976, at which the matter was continued to April 20 to allow objectors to gather evidence. In the interim, at a hearing at which Northwestern did not appear, the board, at the instance of the objectors, issued six discovery subpoenas against Northwestern. When the university refused to comply, the board decided not to consider the application for variation while the subpoena question was pending. Northwestern did not appear at the April 20 hearing, and the matter was continued to May 13. Northwestern did not appear on that date, but sent the "statement of facts" presented to the zoning amendment committee and a letter requesting a continuance until July. The matter was continued to September 21. In July the circuit court granted Northwestern's motion to quash the subpoenas on the ground that the board had no authority to issue discovery subpoenas. At the hearing on September 21, the board tried to elicit from Northwestern's counsel facts or arguments showing how the university met the standards for a variation prescribed in the ordinance. Counsel, however, was content to rely on his contention that the ordinance was unconstitutional, a matter admittedly not within the board's competence. At the conclusion of the September 21 meeting the board voted to recommend that the city council deny Northwestern's application for a variation.

On November 1, 1976, the Evanston city council denied both Northwestern's petition for an amendment and its application for a variation. On November 2, Evanston filed a motion in the circuit court asking that Northwestern's suit be dismissed for failure to exhaust local and administrative remedies. The court granted this motion on December 21, 1976.

The principal question before us is whether Northwestern has complied with the established rule that a property owner who complains that an otherwise valid zoning ordinance is arbitrary and unreasonable as applied to his property must exhaust his administrative remedies before seeking judicial relief. When he complains, however, that the ordinance is void as a whole or in its terms, he need not exhaust these remedies. (*Bright v. City of Evanston* (1956), 10 Ill. 2d 178; *Bank of Lyons v. County of Cook* (1958), 13 Ill. 2d 493.) The city argues that Northwestern was obliged to exhaust its administrative remedies because it did not challenge every section of the zoning ordinance, an interpretation of the *Bright* doctrine which we believe too restrictive. Despite the language in *Bright* that a plaintiff must attack the ordinance "as a whole" or "in its entirety" to dispense with exhaustion (10 Ill. 2d 178, 184-85), later decisions have held it sufficient that a plaintiff attack the ordinance or statute "in its terms" (*Bank of Lyons v. County of Cook* (1958), 13 Ill. 2d 493, 495; *Pierce v. Carpentier* (1960), 20 Ill. 2d 526, 530) or "on its face" (*Walker v. State Board of Elections* (1976), 65 Ill. 2d 543, 552; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548). It would be rare indeed for a plaintiff to have standing to challenge every section of a zoning ordinance unless, for example, he attacked the ordinance for failure to comply with essential elements of a prescribed enactment process, as in *Cosmopolitan National Bank v. City of Chicago* (1963), 27 Ill. 2d 578. We hold, therefore, that a plaintiff

who challenges the validity of an ordinance on its face need not exhaust administrative remedies.

Obviously, however, one who merely alleges that an ordinance is unconstitutional on its face does not thereby avoid the exhaustion requirement. If such were the case, the requirement would be meaningless. In order to come within this exception, a plaintiff must point to language in the ordinance which, without more, reasonably can be said to violate a specific constitutional guarantee. Northwestern claims that this zoning ordinance is unconstitutional on its face because it permits the university to maintain athletic facilities but prohibits it from using those facilities for professional sports or other commercial purposes. The university asserts that this distinction is inherently arbitrary because it can have no possible relation to an impact on the surrounding neighborhood. That proposition, however, is not self-evident. On the surface, at least, there would appear to be substantial differences between the impact of a predictable number of intramural or intercollegiate athletic events and an unpredictable number of commercial athletic events. Whether other aspects of the differing impact of commercial versus noncommercial uses are significant would require proof above and beyond the circumscribed bounds of surface unconstitutionality. In *Bright* the plaintiff complained that an ordinance permitting him to construct a single-family dwelling on his property but prohibiting him from constructing an apartment house was arbitrary and unconstitutional. This court held that plaintiff attacked the ordinance only as applied. (10 Ill. 2d 178, 186.) The situation before us is fundamentally similar, and we hold that the university was obliged to exhaust its administrative remedies.

We cannot agree with the appellate court's conclusion that those remedies had been exhausted. In reaching its conclusion that court overlooked what we regard as the dispositive fact: when this suit was filed on April 19, 1976,

Northwestern's petition for an amendment to the ordinance and its application for a variance were both pending before the zoning authorities, which, indeed, had not yet held hearings on the merits. Under these circumstances, the university cannot be said to have exhausted its administrative remedies at the time this suit was filed. It is true that in dismissing its earlier action the circuit court had indicated Northwestern might again bring suit if the administrative proceedings did not move "sufficiently expeditiously." Since the same judge subsequently granted the city's motion to dismiss the later suit, however, he clearly did not regard the interval from November 21, 1975, to April 19, 1976, as constituting an unreasonable delay by the local authorities sufficient to permit Northwestern to disregard the exhaustion requirement. We cannot say that the court erred in so ruling.

The appellate court based its holding that Northwestern had exhausted its remedies before the zoning authorities partly on "[t]he history of the litigation surrounding this ordinance." (55 Ill App. 3d 609, 618.) That history persuaded the court that "further endeavor before these bodies would be futile." (55 Ill. App. 3d 609, 618.) A party will not, of course, be required to exhaust his administrative remedies when it would be patently useless to seek relief before local bodies. (*Van Laten v. City of Chicago* (1963), 28 Ill. 2d 157, 159; *County of Lake v. MacNeal* (1962), 24 Ill. 2d 253, 260.) However, the facts of this case do not demonstrate that such action would be useless. The only pre-1975 effort by Northwestern to secure from local zoning authorities the desired changes was its 1971 application to permit professional tennis matches. While the zoning board of appeals had recommended allowing the requested variance, the city council apparently did not act, and the matter seems not to have been pursued. We simply do not agree that the history of controversy between Northwestern and Evanston over the zoning ordinance is such that, in November

1975, the university's resort to the local authorities was patently useless and therefore unnecessary. The exhaustion requirement cannot be avoided simply because relief may be, or even probably will be, denied by the local authorities. *Bank of Lyons v. County of Cook* (1958), 13 Ill. 2d 493, 497.

Nor does the fact that the local zoning authorities and the city council denied Northwestern's petition and application after the initiation of this lawsuit justify us in holding that the university exhausted its local remedies retroactively, although this seems to have been an unarticulated premise of the appellate court's decision. We believe, however, that such a holding would have pernicious consequences as a precedent. It would in effect be a holding that a party may pursue administrative and judicial remedies simultaneously so long as the administrative proceedings are concluded before there has been a hearing on the merits in the lawsuit. Such a holding would allow a party to file a lawsuit and then satisfy the exhaustion requirement by putting in a perfunctory appearance before the local bodies, reminding them of the pendency of the suit, on which the party's real effort was focused. Indeed, our review of the record indicates that this is not an unfair characterization of the university's conduct in this case. We decline to hold that such conduct satisfies the exhaustion requirement.

The appellate court and the parties considered the dispositive issue to be what kind of evidentiary showing a party must make before local zoning authorities to satisfy the exhaustion requirement. On the view that we take of the case, however, we need not reach this issue.

Accordingly, the judgment of the appellate court is reversed, and the order of the circuit court dismissing the complaint is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*