LOUIS L. SOMMER, Petitioner-Appellant, *v.* JACK GOETZE, Chairman of the Tazewell County Sheriff's Merit Commission, *et al.*, Respondents-Appellees.

Third District    No. 81-231

Opinion filed December 9, 1981.

HEIPLE, J., concurring in part and dissenting in part.

Michael M. Mihm, of Peoria, for appellant.

Bruce W. Black, State's Attorney, of Pekin (G. Edward Orr, Assistant State's Attorney, of counsel), for appellees.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Deputy Sheriff Louis L. Sommer had been employed in his position with the Tazewell County sheriff's office for 18 years, when on December 2, 1980, he allegedly exchanged heated words with Tazewell County Assistant State's Attorney Thomas Ebel in an East Peoria tavern. The

following day, on complaint of Ebel, an investigation of the incident was begun by the Tazewell County sheriff. That investigation resulted in charges of misconduct against Deputy Sommer and in a hearing before the Tazewell County Sheriff's Merit Commission. Following the hearing, the Commission found Deputy Sommer guilty of the following:

a. Threatening to do bodily harm to Assistant State's Attorney Ebel, said conduct constituting mistreatment of a human being and conduct unbecoming an officer tending to reflect discredit on the department;

b. Using coarse, profane and insolent language to a citizen; and

c. Lying to investigative officers about the threats made to and conversation with Ebel.

For these offenses, the deputy was dismissed from his position with the sheriff's office. The decision of the Merit Commission was appealed to the Circuit Court of Tazewell County, which affirmed the Merit Commission's decision. Deputy Sommer seeks our review of the circuit court order, urging primarily that two errors occurred in the proceedings which took place before the Merit Commission, either one of which requires a new hearing on the charges made.

First, the Tazewell County sheriff who lodged the complaint of misconduct against his deputy, as is the recommended procedure (1971 Ill. Op. Att'y Gen. No. S-328), was represented in the hearing before the Commission by the office of Tazewell County State's Attorney, a duty required by statute of the latter. (Ill. Rev. Stat. 1979, ch. 14, par. 5(3).) The representation by the State's Attorney's office was objected to by Deputy Sommer on the grounds of conflict of interest inasmuch as the Assistant State's Attorney was not only the complaining party but also a key eyewitness to the events which transpired in the East Peoria tavern. Neither the Merit Commission or the State's Attorney's office took any action with regard to this objection. Also, Deputy Sommer objected before the Merit Commission to the admission into evidence of the results of his polygraph examination conducted during the course of the Tazewell County sheriff's internal investigation. Again, this objection was denied. Deputy Sommer believes that either of these irregularities in the Merit Commission's proceedings so tainted the outcome as to deny him a fair hearing. We agree.

In considering the first of the issues raised, we turn to the statutory authority for the appointment of a special State's Attorney:

"Whenever the attorney general or state's attorney * * * is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding, and the

attorney so appointed shall have the same power and authority in relation to such cause or proceeding as the attorney general or state's attorney would have had if present and attending to the same * * *." (Ill. Rev. Stat. 1979, ch. 14, par. 6.)

Deputy Sommer contends that the Merit Commission should have acted pursuant to this statutory authority and appointed a disinterested attorney to prosecute the sheriff's case. The Commission defends its inaction by pointing to the word "court," and argues that the authority granted by the statute is limited to constitutionally created courts with plenary powers. (Ill. Const. 1970, art. VI, §1.) Since the Merit Commission is not a "court" within the constitutional definition, it contends that Deputy Sommer should have sought relief in the circuit court, and cannot now complain for his failure to do so.

It is clear under Illinois law that administrative boards and commissions such as the Merit Commission in the instant case are not "courts" in the constitutional sense of that term. (*Liquid Carbonic Co. v. Industrial Com.* (1933), 352 Ill. 405, 186 N.E. 140; *Michelson v. Industrial Com.* (1941), 375 Ill. 462, 31 N.E.2d 940.) And, absent a clearly expressed contrary legislative intent as to a different meaning, the word "court" as contained in a statute can only mean one within the judicial structure of government or a judge thereof, and cannot include nonjudicial adjudicatory tribunals simply because such tribunals exercise quasi-judicial powers. (*Department of State v. Spano* (1971), 1 Pa. Commw. 240, 274 A. 2d 563.) Nevertheless, we believe such clear legislative intent for a broader definition is present here. The "court" in question here is one that might hear "any cause or proceeding, civil or criminal" in which the Attorney General or the State's Attorney has a "duty to prosecute or defend." This language carries the strong inference that the legislature intended a more expansive definition of the term than it possesses in a strict constitutional sense.

■■ With the mushroom-like growth of quasi-judicial adjudicatory tribunals witnesses in recent years at local, State and national levels of government, the role of the Attorney General and State's Attorneys in representing their official clients has experienced a corresponding change. The policy considerations which allow the appointment of a substitute Attorney General or State's Attorney when those elected officers appear with conflicting interests before a judge of the circuit, appellate or supreme courts, are no less applicable to situations when those elected officers appear with conflicting interests before other adjudicatory tribunals. The conflict of interest is no less real when the variance sought from the county zoning board affects real property adjoining the State's Attorney's residence or when the permit sought from the county liquor commission involves the State's Attorney's parent or sibling. We believe it

is consistent with the sweeping language of section 5 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1979, ch. 14, par. 6) and with the general policy considerations underlying that same paragraph, to hold that the Sheriff's Merit Commission was authorized to appoint a disinterested attorney to represent the Tazewell County sheriff in his complaint against Deputy Sommer.

■■ The appointment of a special State's Attorney is not mandatory, the statute only requiring that such an appointment "may" be made. Previous decisions have determined that this permits the hearing body to exercise its discretion in reviewing the circumstances to determine the need for such action. (*In re Petition of McNulty* (1978), 60 Ill. App. 3d 701, 377 N.E.2d 191; *Hutchens v. Wade* (1973), 13 Ill. App. 3d 787, 300 N.E.2d 321.) Such authority notwithstanding, that discretion must be exercised to promote the underlying policy of a just, fair and impartial hearing, and where those ends are thwarted, an abuse of discretion occurs. In the context of a criminal prosecution, a clear conflicting interest has been held to exist where it appeared that the State's Attorney was a prospective witness. (*People v. Moretti* (1952), 349 Ill. App. 67, 109 N.E.2d 915.) Although the instant proceeding was civil in nature, the potential sanction, *i.e.*, loss of merit employment, argues for the same holding as reached by the *Moretti* court. Indeed here, where the assistant State's Attorney was the complainant and key eyewitness, we hold that it was an abuse of discretion to refuse appointment of a disinterested attorney to prosecute the charges brought against Deputy Sommer.

The second of the issues raised is brought to our attention at a time when disagreement exists in the appellate court as to its resolution. In *Washington v. Civil Service Com.* (1981), 98 Ill. App. 3d 49, 423 N.E.2d 1136, the results of polygraph examinations were held admissible as evidence in administrative hearing. In *McGowen v. City of Bloomington* (1981), 99 Ill. App. 3d 986, 426 N.E.2d 328, a contrary holding was reached. We believe *McGowen* represents the preferred view.

Set forth in a well-researched and scholarly opinion are the many problems inherent in the admission of polygraph results as substantive evidence. (*People v. Monigan* (1979), 72 Ill. App. 3d 87, 390 N.E.2d 562.) It was there noted that the polygraph's degree of accuracy is subject to widespread disagreement among experts; that the results of examinations cannot be verified by extrinsic evidence; that the subject's health can affect the outcome of the test; that many polygraph examiners are unqualified; that the examiner's expertise has substantial bearing on the reliability of examination results; that fact-finders inordinately weigh polygraph results; and that the machine tends to displace the finder of fact. (72 Ill. App. 3d 87, 96-100, 390 N.E.2d 562, 568-69.) This final observation is particularly troublesome "[i]n an era which worships tech-

nology at the expense of cerebration." *McGowen v. City of Bloomington* (1981), 99 Ill. App. 3d 986, 990, 426 N.E.2d 562.

■■ *Monigan* considered the admission of polygraph results in a criminal proceeding where the standard of proof is greater and where the rules of evidence are more strictly applied. Although the rules of evidence are more casual in an administrative adjudication (*Northwestern University v. City of Evanston* (1977), 55 Ill. App. 3d 609, 370 N.E.2d 1073, *rev'd on other grounds* (1978), 74 Ill. 2d 80, 383 N.E.2d 964), such casualness cannot abrogate the right to a just, fair and impartial hearing. With the reliability of the polygraph examination so vulnerable to so many varying attacks, we believe justice, fairness and impartiality are abrogated when the results of such examinations are considered as substantive evidence. The petty criminal whose potential jeopardy does not exceed a few hundred dollars does not receive a fair trial where polygraph results are admitted into evidence. (*People v. Boney* (1963), 28 Ill. 2d 505, 192 N.E.2d 920.) The potential jeopardy facing Deputy Sommer, loss of merit employment, suggests that the evidence admitted against him should be no less reliable. For these reasons, we deem the holding of *McGowan* to be the better rule of law.

The errors in the hearing before the Merit Commission, as set out above, denied Deputy Sommer a fair hearing on the charges made against him. For the reasons set forth, he is entitled to a new hearing.

Reversed and remanded.

BARRY, J., concurs.

JUSTICE HEIPLE, concurring in part and dissenting in part:

I concur with the reversal and remand on the issue of the improper use of the polygraph evidence.

I do not believe, however, that there is any conflict of interest because the State's Attorney's office prosecuted the matter before the Merit Commission. A conflict of interest would exist in the State's Attorney's office if an association would diminish or weaken the prosecution. The opposite result obtains here. Because the victim was a member of the State's Attorney's staff, the interest in prosecution would be enhanced rather than diminished. Also, the prosecutorial function results in no denial to the defendant of any right. The witnesses were subject to cross-examination and the issue was decided by an impartial panel. It is true that the statute cited in the majority opinion provides authority for the appointment of a special attorney. The language of that statute, however, makes this a discretionary matter. That being so, there is really no reason to find a conflict when the interest in prosecution is not diminished. As to that portion of the majority's opinion, I dissent.