(No. 41590.—)

VERNON ANUNDSON *et al., vs.* THE CITY OF CHICAGO.— (RAYMOND P. KAEPPLINGER, Appellee, *vs.* WILLIAM HARMON, Appellant.)

*Opinion filed January 28, 1970.—Rehearing denied March 23, 1970.*

492

YALE STEIN, SIDNEY Z. KARASIK, and PAUL PETER BLACK, all of Chicago, for appellant.

RICHARD M. CALKINS, of Chicago, (CHADWELL, KECK, KAYSER & RUGGLES, of counsel,) for appellee.

MITCHELL P. KOBELINSKI, of Harwood Heights, for *amicus curiae* Parkway Bank and Trust Co.

Mr. JUSTICE WARD delivered the opinion of the court:

The circuit court of Cook County on August 7, 1962, acting in a declaratory judgment action brought by Vernon A. Anundson and his wife Selma, held certain provisions of the Chicago zoning ordinance unconstitutional as applied to certain real property located on Fullerton Avenue in Chicago. The land was then owned by the Anundsons. The beneficial interest in the property now is vested in the appellant, William Harmon. The court's decree provided that the minimum lot area restrictions imposed by the ordinance were void and that the plaintiffs, and all persons claiming through them, had the right to construct a three-story building which would contain 11 stores and offices, six one-bedroom apartments and six efficiency apartments, as they are described. The City of Chicago was ordered to examine any application, which might be filed by the Anundsons to construct such a building, in a manner consistent with the spirit and intent of the decree and the plans the plaintiffs had offered in evidence in the declaratory judgment action. Jurisdiction was expressly retained by the court for the purpose of enforcing the provisions of its decree.

On May 4, 1966, about three and one-half years after the entry of the court's order, Raymond P. Kaepplinger, an adjoining landowner, filed a petition which complained that the building was being constructed in violation of the decree

and the building and zoning ordinances of the City of Chicago. It alleged that the building which was under construction would contain a meeting hall and a roof garden, which were not authorized by the decree, and would not provide adequate parking facilities as the decree required. The petition sought to enjoin William Harmon, the contractor, and Reuben and Eve Sonshine, who had acquired the property, from proceeding with further construction. After a hearing on the merits, the petition was dismissed. On appeal, the Appellate Court, First District, reversed and remanded with directions to enjoin further construction or use of the property until it conformed to the requirements of the applicable ordinance as contemplated by the trial court's decree. (*Anundson* v. *City of Chicago*, 97 Ill. App. 2d 212.) William Harmon was the only appellee before the appellate court. We granted him leave to appeal.

Construction of the building has been completed and it contains stores, offices and apartments as allowed by the decree. A basement meeting hall and an enclosed roof garden are also included in the building. Although these facilities were not specifically mentioned in the court's decree, they were described in plans offered in evidence by the plaintiffs. Parking facilities called for by the decree have not been provided.

The property in question was governed by an ordinance which restricted the number of building units which might be constructed on a lot subject to the ordinance. The plaintiffs' suit sought to avoid the restriction and obtain permission to construct a building with a greater number of units than the ordinance permitted. The decree entered permitted this by holding unconstitutional the minimum area provisions of the ordinance as they applied to plaintiffs' premises.

The background for the filing of Kaepplinger's petition was formed when a construction permit for the building was issued on October 6, 1964, and construction was begun

shortly thereafter. After several months the appellee, Kaepplinger, wrote to the Chief Building Inspector of the City of Chicago complaining of the manner in which the building was being constructed. A stop order was issued by the Building Department because of Kaepplinger's complaint but it was subsequently rescinded. When Kaepplinger received no reply to another letter to that office he filed a formal complaint with the department charging that no provision was being made in the construction for off-street parking. On being advised that no departmental action because of the lack of parking facilities was contemplated he filed what has been treated as a petition to intervene in the original declaratory judgment action brought by the Anundsons. This petition, already described, alleged, in part that the court's decree was being violated because of the failure to provide parking facilities.

The principal contentions advanced here by the appellant are: (1) Kaepplinger lacked standing to intervene in the lawsuit; (2) the petition was tardily filed and was barred by the time limitations of sections 26.1 and 72 of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, pars. 26.1 and 72), and under the doctrine of *laches,* as well; (3) the decree of the circuit court has been complied with in all respects.

The argument on the question of standing is that Kaepplinger, an adjoining landowner, should not have been permitted to intervene because he did not show that he would suffer special damage, differing from that which would be sustained by the general public. This argument was rejected by us in *Bredberg* v. *City of Wheaton,* 24 Ill.2d 612. It was there held that adjoining landowners possessed rights which could be adversely affected in a declaratory judgment action of this type, and that they had an interest in such litigation which extended beyond that of the general public. Moreover, it was pointed out that a municipality, concerned primarily with the maintaining of the municipality-wide zoning pat-

tern, might inadvertently compromise or neglect the rights of adjoining landowners in such a lawsuit. It was considered that the rights of such persons could be adequately protected by permitting them to intervene in the litigation. Therefore, pursuant to the liberal provisions of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, par. 26.1) for intervention, we concluded in *Bredberg* that adjoining landowners possess an interest in these declaratory judgment actions which is sufficient to permit their intervention.

The appellant makes the further argument that intervention was improper because the court, when its decree was entered retaining jurisdiction of the cause, was retaining jurisdiction "solely" for the benefit of the plaintiffs. Thus, the appellant says, the decree neither authorized nor invited intervention by another. We cannot accept the narrow interpretation the appellant would place on the decree. Were it adopted, the decree could not be enforced against the plaintiffs who might breach its terms. Nor could the defendant himself complain of the breach by the plaintiffs. The court retained jurisdiction to enforce its decree, and legal standing to enforce it was not limited to the plaintiffs.

The second contention is that since the appellee Kaepplinger filed his petition to vacate the decree more than three and one-half years after its entry, the appellate court erred in holding that the petition was not barred under the two-year period of limitations of section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1967, ch. 110, par. 72.) Petitions filed under section 72 seek relief from a final judgment or decree. While on its face the petition here sought to have the decree vacated, at all times the petition has been considered as one which sought to enforce the decree by advising the trial court of a violation of the terms of its decree. The petition neither contested the provisions of the decree nor requested a re-adjudication of the merits of the case. Rather it asked the court to compel compliance with the terms of

the decree in accordance with the reservation of jurisdiction to grant such relief. The appellate court correctly held that section 72 simply had no application to such a petition.

Nor do we find merit in the argument that the petition was not filed in a timely manner and was therefore barred either under the doctrine of *laches* or under section 26.1 of the Civil Practice Act, which requires that an application for intervention must be timely. As related, the construction permit for the building was not issued until almost two years after the 1962 decree had been entered. During this period of nonactivity adjoining landowners had no reason to suspect there would be any violation of the decree. When the construction commenced and violations were observed the appellee began the complaints to the City of Chicago we have described. Over a year was spent in the addressing and consideration of these complaints. The course of action taken was not entirely futile, for the City did issue a stop order for the violating construction, though it was later rescinded. When the appellee determined that his administrative complaints concerning the failure to provide parking facilities would be ineffectual, he filed his petition to intervene in the circuit court without undue delay. Since section 26.1 of the Civil Practice Act does not specify what will be considered a timely application to intervene, the question whether an application is timely must rest within the sound discretion of the trial court. Although intervention typically is and generally must be sought during the pendency of the suit, it may be allowed after judgment where it is necessary to protect the intervenor's rights. (See, *County of Cook* v. *Triangle Sign Co.,* 40 Ill. App. 2d 214-215.) Since the relief sought by the appellee's petition concerned matters which developed after the entry of the decree, we find that under the circumstances the appellee was not dilatory in applying for that relief. The application was timely within the context of the Civil Practice Act and

under the circumstances the objection, parenthetically made by the appellant, that *laches* should have barred the intervention has no merit.

The argument of the appellant that the building as constructed did not violate the zoning laws nor the provisions of the circuit court's decree does not persuade. The decree provided that the plaintiffs and "all persons by, through or under them" (the appellant) had the right to construct a three-story building which would contain 11 stores or offices, 6 one-bedroom apartments and 6 efficiency apartments. The land was thereby exempted by the decree from the minimum area restrictions of the zoning ordinance which limited the number of dwelling units which might be constructed on lots subject to the ordinance. As is usual in these cases, the ordinance is to be considered inapplicable only to the extent necessary to permit the specific use that the plaintiffs proposed. (*Nelson* v. *City of Rockford,* 19 Ill.2d 410; *Illinois National Bank* v. *County of Winnebago,* 19 Ill.2d 487.) Thus, the appellant continued to be subject to the remaining provisions of the zoning ordinance, including those requiring the providing of parking facilities.

The ordinance required that a building containing dwelling units of the number and type here must provide parking facilities on the premises for a minimum of seven cars. (Municipal Code of Chicago, ch. 194A, section 8.11—2(3).) The appellant's building now provides no on-the-premises parking accommodations, though the roof garden and meeting hall would apparently require parking facilities in addition to the space for seven autos to be provided for dwelling unit use. The City of Chicago does permit a building owner under certain conditions to provide parking spaces beyond the building premises but only when "provided for as a Special Use * * *." (Municipal Code of Chicago, ch. 194A, section 8.11—2.) The appellant, although he claims to have acquired undescribed leases which he says would enable him to provide adequate off-the-premises parking

spaces, has not obtained a special use as the ordinance requires. It is obvious that the appellant has failed to comply with the applicable ordinances. Thus, a nonconforming structure has been erected on the appellant's land in violation of the court's decree. The trial court's statement at the hearing on the appellee's petition made the obligation of the appellant clear: "There is no question about it that the decree contemplated off-street parking and the decree also contemplated that the existing ordinances applicable to the building would be adhered to. Now, what the ordinance requires is that off-street parking be provided, and if they don't want to utilize this space for their seven or eight automobiles they will have to go and apply for a special use."

We cannot properly entertain the appellant's challenge to the constitutionality of the notice requirements of the Municipal Code (Ill. Rev. Stat. 1967, ch. 24, par. 11—13—8), which are that notice of a declaratory judgment proceeding such as this must be sent to adjoining property owners. We will consider questions of constitutionality only when it is necessary for the determination of the case. (*Illinois Central Railroad Co.* v. *Commerce Com.,* 411 Ill. 526; *Osborn* v. *Village of River Forest,* 21 Ill.2d 246; *Howard* v. *Lawton,* 22 Ill.2d 331.) Since our opinion rests on other grounds, consideration of this question is unnecessary.

Another of the appellant's complaints is that constitutional requirements of due process have been violated by the order of the appellate court because no notice of appeal to the appellate court nor other papers related to the appeal were served on Rueben A. or Eva S. Sonshine. The Sonshines are alleged to have been and to be now the owners of the property in question. We do not find support for the claim of ownership. In April, 1965, the Sonshines purchased this property from Vernon and Selma Anundson, the original plaintiffs in the declaratory judgment action. However, more than eight months prior to the rendering of the ap-

pellate court judgment, legal title to the property was transferred by the Sonshines to a title company. A deed in trust evidences the transfer. At about the same time the Sonshines transferred all beneficial interest in the trust to the appellant William Harmon and his wife, Lois. We cannot perceive any violation of due process as alleged by the entering of the appellate court's judgment.

For the reasons we have stated, the judgment of the Appellate Court, First District, is affirmed.

*Judgment affirmed.*