ALI YUSUF *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF VILLA PARK, Defendant (Robert McDaniel *et al.*, Intervening Appellants).

Second District   No. 82—823

Opinion filed December 27, 1983.

534

Joel M. Hellman, of Hartunian, Futterman & Howard, of Chicago, for appellants.

Paul Harrison Stacey and William J. McGrath, both of Wheaton, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

This action involves an appeal from an order of the circuit court of Du Page County granting summary judgment for plaintiffs-appellees Ali Yusuf, individually and for the use and benefit of the Islamic Foundation, an Illinois not-for-profit corporation, and Board of School Trustees (formerly the County Board of School Trustees), for the use and benefit of School District No. 45. Plaintiffs' lawsuit was filed on December 21, 1981, alleging that the action of the defendant Village of Villa Park denying plaintiffs' application for a special use permit was arbitrary, capricious and unreasonable and denied plaintiffs their due process and equal protection rights under the Illinois and Federal constitutions.

At issue on this appeal is the zoning of certain property located on the west side of Addison Street in Villa Park, Illinois. To the north of the subject property is vacant land, and to the east are single-family homes. The subject property and all of the nearby Villa Park property are zoned for single-family homes; R-2 under the Villa Park zoning ordinance. The remaining land around the property lies in the village of Lombard. To the south of the property are single-family homes and to the west are a bank and two churches.

The property is owned by plaintiff Du Page County Educational Region for the use and benefit of School District No. 45 (District 45). On the property is a school house formerly used as a grammar school, a small parking lot and an area used by the neighborhood children as a playing field. Plaintiff Ali Yusuf (Yusuf) is a real estate investor. On November 7, 1980, he entered into an agreement to purchase the subject property, but performance was conditioned upon Yusuf being able to obtain a special use permit. On November 6, 1981, Yusuf assigned his interest in the property to the Islamic Foundation (Foundation). The Foundation is a religious association of 200 Muslim families which conducts various worship and educational activities for its members and which rents facilities from the village of Villa Park for these purposes.

Yusuf filed his special use permit application with the Villa Park Plan Commission (Plan Commission) in January 1981 and the Plan Commission held three hearings on the application in February and March 1981. In his application, Yusuf proposed that the subject property be operated as a day-care center and that the Foundation would use the facility as a culture center including a night school and a mosque. The day-care center would operate from 6:30 a.m. to 6 p.m., and night classes would be conducted until 9 p.m. five days each week. Worship services would be held on Friday and Sunday afternoons. To accommodate the additional cars expected to be parked at the culture center, Yusuf's plans provided for the addition of 77 paved parking spaces.

At the close of hearings, the Plan Commission voted eight votes to one to deny Yusuf's application. Plan Commission members expressed specific reasons for denying the application: the extended hours of operation would create additional traffic and would place additional burden on the neighborhood; the proposed center would utilize village services, but as a tax-exempt facility would generate no revenues; only two Villa Park families would use the center; and the paving of land to provide the additional parking spaces would exacerbate an already-serious flooding problem. On April 20, 1981, the Board of Trustees of Villa Park voted to accept the Plan Commission's recommendation and to deny Yusuf's application.

Plaintiffs thereafter filed on February 23, 1982, an amended complaint for declaratory and injunctive relief, alleging that the action of the village was arbitrary, capricious and unreasonable and denied plaintiffs their due process and equal protection rights under the Illinois and Federal constitutions. On June 9, 1982, plaintiffs filed a motion for summary judgment. The evidence upon which plaintiffs relied consisted of the transcripts of the proceedings before the Plan Commission and affidavits attached to the motion. The village filed a cross-motion for summary judgment and a response to plaintiffs' motion. The trial court granted plaintiffs' motion on August 3, 1982. Thereafter, the village and plaintiffs entered into an agreement in which the village agreed not to appeal the adverse judgment.

Petitioners to intervene-appellants, Robert and Gail McDaniel (McDaniels), who are owners of the home adjoining the subject property to the south, and the Villa-Bard Community Association (Association) learned of the agreement between plaintiffs and the village on approximately August 29, 1982, and petitioned the court on September 2, 1982, for leave to intervene and to file a motion for reconsideration of the order granting judgment to plaintiff. On September 15, 1982,

the trial court ruled that the intervention petition was untimely, denied the petition, and entered a finding pursuant to Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal. Petitioners filed a timely notice of appeal.

Petitioners assert that the trial court improperly denied their petition to intervene as untimely. Petitioners argue that once they learned their interests were not being adequately represented and protected by the village, they acted diligently and filed their intervention petition in a timely fashion. In response, plaintiffs argue that the trial court did not abuse its discretion in denying petitioners' intervention petition. Plaintiffs contend that since petitioners were aware of the litigation from its inception and raised no new grounds for relief in their petition, the decision not to intervene prior to judgment precludes their post-judgment attempt to intervene. Plaintiffs also argue that the case authority cited by petitioners is inapposite and that petitioners have no standing to intervene because they alleged only a general interest in the zoning decision based upon the proximity of their property to the subject property.

■■ The first issue presented is whether petitioners have standing to maintain this appeal. Plaintiffs contend petitioners may not appeal from the judgment on the merits because they were not parties to the litigation in the trial court. Petitioners cite *Nott v. Wolff* (1960), 18 Ill. 2d 362, as authorizing their appeal in this case. In *Nott*, two landowners in the village of Wilmette planned to build a motel, but after village residents submitted a petition to the village board requesting that the zoning ordinance be amended to prohibit the construction of a motel, the landowners filed a petition for writ of *mandamus* requesting the village manager to issue them a building permit. The hearing referee, after considering the evidence, ruled the amended ordinance was void as applied to the subject property and recommended that the court issue the writ of *mandamus*. The trial court affirmed the referee's finding and certified the case for direct appeal to the supreme court. The defendant village did not prosecute the appeal, but a bank which was not a party in the trial court appealed as an owner of property adjoining the land on which the motel was to be constructed. The supreme court rejected the appellee's claim that the appeal should be dismissed because the bank was not a party of record, was not injured by the judgment, and did not have an appealable interest. Instead, the *Nott* court held the bank had standing to maintain the appeal.

The similarities between *Nott* and the instant case require the conclusion that petitioners here have standing to maintain this appeal.

Both the appellant in *Nott* and the petitioners here were not parties in the trial court. In both cases, the municipality representing the public chose not to appeal, and the party seeking to appeal alleged as its injury the diminution in value of its property which was in the vicinity of the subject property. Plaintiffs in their appellate brief fail to address petitioners' contention that *Nott* controls the instant case. In light of the similarity between the facts in *Nott* and those here and in the absence of contrary authority cited by plaintiffs, we conclude petitioners possessed the requisite standing to maintain this appeal.

■ The next issue is whether petitioners had standing in the trial court to file their intervention petition. Plaintiffs argue that petitioners have failed to demonstrate an injury sufficient to confer standing to challenge the trial court's action. The only authorities cited by plaintiffs, however, are cases stating the general principle that a party must have a direct injury or personal stake to possess standing.

Petitioners respond that their allegations in their intervention petition demonstrate a special and not simply a general injury, and therefore, such allegations confer standing. In their petition, petitioners allege: the McDaniels own and reside at the property adjoining the subject property; the members of the association are homeowners located in the vicinity of the subject property; and the proposed nonconforming use would result in additional traffic and noise at extended hours of the day and night, would have a substantial adverse impact upon the members' and McDaniels' quiet enjoyment of their property, and would have an adverse impact on the value of their property which is near the subject property. We conclude these facts constitute sufficient allegations of injury to confer standing, for adjoining landowners possess rights which can be affected adversely by declaratory judgment actions and these rights constitute an interest in the zoning decisions which is distinct from that which the general public can assert. (*Anundson v. City of Chicago* (1970), 44 Ill. 2d 491, 495-96; *Bredberg v. City of Wheaton* (1962), 24 Ill. 2d 612, 623-24; *Truchon v. City of Streator* (1979), 70 Ill. App. 3d 89, 92-93, 388 N.E.2d 249, 251-52.) Thus, plaintiffs' claim that petitioners lack standing in the trial court to contest the zoning decision is unpersuasive.

■ Plaintiffs argue that even if petitioners had standing to intervene, their intervention petition was not timely and therefore, the trial court's denial of their intervention petition was not an abuse of discretion. Whether intervention is sought as a right or by leave of court, the petition must be timely filed. (*Childress v. State Farm Mutual Automobile Insurance Co.* (1968), 97 Ill. App. 2d 112, 239 N.E.2d 492.) Section 2—408 of the Code of Civil Procedure (Ill. Rev. Stat.

1981, ch. 110, par. 2—408), which governs the right to intervene, is to be liberally construed. (*Wheeling Trust & Savings Bank v. Village of Mount Prospect* (1975), 29 Ill. App. 3d 539, 331 N.E.2d 172.) The determination of whether a petition is timely is a matter left largely to the sound discretion of the trial court. *Forestview Homeowners Association, Inc. v. County of Cook* (1974), 18 Ill. App. 3d 230, 309 N.E.2d 763.

Presented with circumstances similar to those in the case at bar, the court in *Standard Bank & Trust Co. v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174, 377 N.E.2d 1152, held that the intervention petition of homeowners was timely even though filed after trial and after the trial court had entered its order approving an agreement between the developer and the village. In *Standard Bank*, the plaintiffs-landowners challenged the denial by the defendant-village of a site plan which provided for the development of the subject property as a shopping center. Following a trial, judgment was entered for the landowners, and subsequently the village entered into an agreement with the landowners which provided the village would not appeal the decision. Six days after the court approved the agreement, the petitioners filed an intervention petition wherein they admitted that they were aware of the litigation but had believed their interests were adequately represented by the village prior to the settlement. The trial court denied the petition as untimely. On appeal, the First District of our appellate court reversed. Prior to the time the landowners and the village reached their agreement, the court stated, the petitioners had "no reason to expect that their interests did not coincide with those of the Village and that they could not rely upon the Village to represent them adequately." (61 Ill. App. 3d 174, 178, 377 N.E.2d 1152, 1154.) Since the petitioners sought leave to intervene six days after the trial court approved the agreement, the appellate court held the petition was timely.

The factual similarity between *Standard Bank & Trust Co. v. Village of Oak Lawn* (1978), 61 Ill. App. 3d 174, 377 N.E.2d 1152, and the case at bar persuades us that the trial court here abused its discretion in denying petitioners' intervention petition. Within five days of learning of the board's decision not to appeal, petitioners sought leave to intervene. Like the petitioners in *Standard Bank*, petitioners here were aware of the progress of the litigation, but reasonably believed their interests were protected adequately by the village. Plaintiffs unpersuasively attempt to distinguish *Standard Bank* by stating that there, the proposed zoning change was more radical than the change in the instant case. The nature and severity of the zoning

change are unrelated to the timeliness of the petition. Thus, the trial court's denial of petitioners' intervention petition was an abuse of discretion and constitutes reversible error. See *City of Lockport v. County Board of School Trustees Will County* (1971), 2 Ill. App. 3d 970, 276 N.E.2d 13.

■ In addition to asserting their right to intervene, petitioners contend the trial court awarded judgment improperly to plaintiffs and instead should have entered summary judgment in favor of the village. In response, plaintiffs argue summary judgment was entered correctly in their favor and emphasize the fact that the affidavits attached to their motions were uncontradicted. Since the village failed to file any counteraffidavits, plaintiffs contend, the trial court was required to accept as true the facts alleged in the uncontradicted affidavits and to enter judgment in their favor. In reply, petitioners argue that plaintiffs' motion for summary judgment incorporated by reference the transcripts of the hearings before the Plan Commission. Since the transcripts contain facts which not only controvert facts in plaintiffs' affidavits, but also establish petitioners' right to judgment as a matter of law, petitioners contend, the trial court erred in granting plaintiffs' motion for summary judgment.

The principles with respect to summary judgment motions are well settled. If a genuine issue of material fact exists, a motion for summary judgment may not be granted. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) In determining whether there is a genuine issue of material fact, a trial court is required to consider the pleadings and admissions, affidavits in support of and in opposition to the motion, and any other evidence before the court. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) Further, the trial court must construe the pleadings and affidavits most strictly against the moving party and most liberally in favor of the opponent in ruling on the motion. (*Bard v. Harvey* (1979), 74 Ill. App. 3d 16, 392 N.E.2d 371.) Since the opposing party has the right to a trial if there is a genuine issue of fact, the right of the moving party to summary judgment must be clear and free from doubt, and the granting of the motion cannot be a matter of judicial discretion. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) While a party against whom a motion for summary judgment has been filed need not prove his case at this preliminary stage, he is required to present some factual basis that would arguably entitle him to a judgment upon the applicable law. (*Martin v. American Legion Post No. 784* (1978), 66 Ill. App. 3d 116, 383 N.E.2d 672.) Facts unrelated to the essential elements of plaintiffs' cause of

action are immaterial, and regardless of how sharply controverted, their presence in the record will not warrant denial of a motion for summary judgment. *Mid States Vending Service, Inc. v. C.A.P., Inc.* (1977), 45 Ill. App. 3d 947, 360 N.E.2d 448.

A party need not support his summary judgment motion with affidavits. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005.) However, if a party moving for summary judgment does file supporting affidavits containing well-pleaded facts and the party opposing the motion files no counteraffidavits, the material facts in the movant's affidavits stand as admitted. (*Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, 385, 425 N.E.2d 1055, 1058.) A party opposing a motion for summary judgment supported by affidavits cannot defeat the motion relying solely upon his complaint (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380), and even the allegations of the verified complaint cannot prevail over the uncontradicted facts set forth in affidavits submitted by the movant. *LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 702-03, 355 N.E.2d 70, 76.

Because our review of the pleadings and affidavits discloses that not all of the material facts were resolved, we conclude the entry of summary judgment in favor of plaintiffs was error. In its answer, defendant village averred that the proposed use would result in increased traffic congestion. Plaintiffs did not raise the issue of traffic congestion in their complaint, and the issue is only mentioned briefly in one of the affidavits attached to plaintiffs' motion for summary judgment. Stephen M. Park, a professional urban planner, supported his opinion that the highest and best use of the subject property was the use proposed by plaintiffs with the following statement: "Alternative uses such as multi-family, offices, or commercial land use most often produce higher traffic and parking volumes because of the higher intensity of use ***." Even though the village failed to file a counteraffidavit challenging this statement, Park's affidavit does not resolve the factual issue of whether the proposed use would increase traffic in the neighborhood. The statement is conclusory and is unsupported by facts in the affidavit. Furthermore, the conclusion is stated in general terms emphasizing that "in most cases" the traffic is greater when land is converted to commercial or multifamily uses. Therefore, we do not believe Park's uncontroverted affidavit is dispositive of the fact question whether the proposed use would have an adverse impact on the neighborhood traffic. We note that plaintiffs at oral argument did not contend that the traffic question was resolved by the affidavit, but rather argued only that the concerns over traffic were unsupported conclusions and therefore were not facts capable of

precluding summary judgment. Viewing the pleadings and affidavits in a light most favorable to the nonmovant, we conclude the impact of the proposed use on traffic is a disputed question of fact.

To prevent summary judgment, however, a fact issue must not only be disputed; it must also be material to resolution of the lawsuit. The Villa Park ordinance pertaining to special uses states that no special use shall be granted by the Board of Trustees unless the Plan Commission finds that the location of the proposed use site with respect to the streets giving access to it shall be in harmony with the appropriate and orderly development of the district. A fair reading of this ordinance suggests the effect of a proposed use on the neighborhood traffic flow as a relevant consideration in ruling on a special use application. As the court stated in *St. James Temple of the A.O.H. Church of God, Inc. v. Board of Appeals* (1968), 100 Ill. App. 2d 302, 310, 241 N.E.2d 525, 529, *cert. denied* (1969), 395 U.S. 946, 23 L. Ed. 2d 464, 89 S. Ct. 2019:

> "We realize that traffic congestion during church services is always present no matter where a church might be located, but a municipality must consider traffic and parking as important factors in determining whether the public safety and welfare are protected through the grant of a special use."

Therefore, the impact of the proposed use on traffic was material to the trial court's determination whether the Board of Trustees' action in denying the special use permit was arbitrary and capricious. Since the impact of the proposed use on traffic is disputed and unresolved, the trial court erred in granting summary judgment to plaintiffs.

The record also discloses that the question of public need for the proposed use was unresolved when the trial court granted summary judgment. This issue is clearly material to the resolution of the dispute because the Villa Park planning ordinance expressly requires consideration of the public need of the proposed use before denying or granting a special use application. In its motion for summary judgment, the village argued that the existing day-care centers in the area were operating at less than full capacity. The village further argued that plaintiffs' evidence had only shown that the location was convenient for the proposed use, not that the location was required, and that the showing of convenience was insufficient to establish public need.

In their reply brief supporting their summary judgment motion, plaintiffs challenged the village's contention that the record demonstrated lack of public need for the proposed use. Plaintiffs referred to the affidavit of Stephen Park, "whose analysis of the subject property and surrounding area clearly and irrefutably established the many

benefits of the proposed use." Plaintiffs further cited as evidence of public need the fact that the subject property was centrally located for the members of its congregation. Parks' affidavit does state one benefit of the proposed use; that the property will act as a buffer between the high density population areas to the west and the single-family residential areas on the east of Addison Street. This conclusion, however, is not dispositive of the factual question of whether there is a public need for the proposed use. We cannot say, as a court must when affirming a summary judgment order, that the movant's right to judgment is free from doubt. *Fryison v. McGee* (1982), 106 Ill. App. 3d 537, 540, 436 N.E.2d 12, 14.

■ While we predicate our reversal on the existence of disputed issues of material fact, we believe the entry of summary judgment also was error because the trial court considered the transcripts of the hearing testimony in ruling on the motion. In its order, the trial court expressly stated it considered "the entire record together with transcripts of the testimony taken at the rezoning hearing \*\*\*." A trial court in a declaratory judgment action challenging the constitutionality of the statute should not consider the testimony before the zoning agency. Zoning ordinances are enacted under legislative authority to provide for the public health, safety and welfare. (*Anthony v. City of Kewanee* (1967), 79 Ill. App. 2d 243, 247, 223 N.E.2d 738, 740.) Where the ultimate authority to rule on a specific application resides in a board of trustees, as is true in the case at bar, the board is acting in a legislative and not in an administrative capacity. As a result of the separation-of-powers doctrine, courts are without power generally to inquire into the wisdom of an ordinance or the motives of the legislature for enacting it. (*Anthony.*) When the governing authority of the municipality performs its legislative function, the propriety of the exercise of its discretion is not dependent upon the adequacy or sufficiency of the supporting evidence. *Siegel v. City of Chicago* (1970), 127 Ill. App. 2d 84, 104, 261 N.E.2d 802, 812; *Anthony v. City of Kewanee* (1967), 79 Ill. App. 2d 243, 223 N.E.2d 738.

The legislative body's decision regarding the zoning application is not subject to administrative review by the courts (*Smith v. County Board* (1980), 86 Ill. App. 3d 708, 715, 408 N.E.2d 452, 459), and a trial court is without subject-matter jurisdiction to review an ordinance enacted by a legislative body if the plaintiff's complaint seeks judicial review pursuant to the Administrative Review Act. (*Young v. City of Belleville* (1983), 115 Ill. App. 3d 960, 451 N.E.2d 913.) Rather, the zoning ordinance must be challenged by a declaratory judgment action where the court will consider such independent evi-

dence as the parties seek to introduce. (*Smith v. County Board* (1980), 86 Ill. App. 3d 708, 715, 408 N.E.2d 452, 459; see *Northwestern University v. City of Evanston* (1977), 55 Ill. App. 3d 609, 370 N.E.2d 1073, *rev'd on other grounds* (1978), 74 Ill. 2d 80.) The zoning ordinance is presumed valid, and the party attacking the ordinance bears the burden of proving its invalidity. (*Cosmopolitan National Bank v. County of Cook* (1983), 116 Ill. App. 3d 1089, 1094, 452 N.E.2d 817, 822.) A property owner may overcome this presumption by showing with clear and convincing evidence that the ordinance as applied to him is unreasonable, arbitrary and bears no reasonable relation to the public health, safety, morals or welfare. (*Cosmopolitan.*) The nature of the proof relevant to a declaratory judgment action differs from that introduced before a zoning body.

> "[In the court action, the] validity of the ordinance is presumed and such validity does not depend on the evidence presented at the hearings before the Zoning Board of Appeals. The transcripts of the testimony are at best secondary evidence, self serving and hearsay. The attack upon the validity of the ordinance is an independent action unrelated to the hearings before the Board of Zoning Appeals. To permit the introduction of the transcripts would deprive the Defendants of their right to have primary or direct evidence presented in open court for assessment and evaluation by the court." (*Anthony v. City of Kewanee* (1967), 79 Ill. App. 2d 243, 249, 223 N.E.2d 738, 741; see also *Smith v. County Board* (1980), 86 Ill. App. 3d 708, 715, 408 N.E.2d 452, 459.)

Since the function of the trial court in a declaratory judgment action challenging the application of a zoning ordinance to a specific property is to conduct a trial *de novo* and not simply to evaluate the zoning body's ruling by standards of administrative review, we conclude the trial court erred in considering the transcripts of the Plan Commission hearing.

■ Petitioners argue that plaintiffs cannot contend that the trial court erred in considering the transcripts of proceedings before the Plan Commission because plaintiffs introduced those transcripts by incorporating them in their summary judgment motion. Petitioners rely upon *Karas v. Snell* (1957), 11 Ill. 2d 233, where the supreme court held that a report of proceedings of a prior trial could be used in opposition to a motion for summary judgment because the movant had not objected to use of the transcript in the trial court. We believe *Karas* is distinguishable from the case at bar. In *Karas*, the court specifically found that the testimony in the certified transcript of record

was competent and relevant evidence. The only argument raised by the party opposing its introduction was that the transcript was not in the form of an affidavit. Here, in contrast, the evidence was not competent and relevant to the trial court's determination whether the defendant's action was arbitrary and capricious. We recognize that two courts have allowed introduction of hearing transcripts in a declaratory judgment action on the theory that even though their introduction was improper, the error was waivable. (See *Thompson v. Cook County Zoning Board of Appeals* (1981), 96 Ill. App. 3d 561, 575, 421 N.E.2d 285, 296-97 (plaintiffs cannot assert as error on appeal introduction in the trial court of hearing transcripts when plaintiffs were the parties who offered the transcripts to the trial court for admission); *Forestview Homeowners Association, Inc. v. County of Cook* (1974), 18 Ill. App. 3d 230, 242, 309 N.E.2d 763, 772 (file of proceedings before the zoning board of appeals although inadmissible upon proper objection was admissible if offered and received into evidence without objection).) Although we reverse the order of the trial court because of the existence of factual issues, we note that consideration of the hearing transcripts was error so that upon remand, the transcripts are not used in evaluating the action of the defendant village.

Accordingly, we reverse the order of the circuit court of Du Page County and remand this cause for a trial.

Reversed and remanded.

UNVERZAGT and REINHARD, JJ., concur.