**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230219-U

Order filed April 3, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| GEORGE M. HATCH, LOUISE V. HATCH, ROBERT V. KING, and MARGARET H. KING, | ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| (Otis Dungan and Kathryn Dungan, | ) | Appeal No. 3-23-0219 |
| | ) | Circuit No. 70-G-2266 |
| Intervenors-Appellants, | ) ) | |
| v. | ) ) | |
| City of Elmhurst, a municipal corporation, | ) ) | The Honorable Bonnie M. Wheaton |
| Defendant-Appellee). | ) | Judge, Presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

**ORDER**

*Held*: The trial court erred in denying a petition to intervene for purposes of enforcing restrictions in the court's prior orders because it failed to apply the reasoning in *Anundson v. City of Chicago*, 44 Ill. 2d 491 (1970).

¶ 1          In 1970, the original plaintiffs, George and Louise Hatch (the Hatches), and Robert and Margaret King (the Kings), filed a complaint for declaratory judgment challenging the constitutionality of a zoning ordinance that barred them from constructing an apartment complex. Finding the City's zoning ordinance unconstitutional as applied, the trial court ordered the City to issue the requisite construction permits and declared that the planned development was valid subject to specific restrictions. One of those restrictions limited construction on certain land to surfacing. The order retained jurisdiction over the case to enable the trial court to construe and enforce the order.

¶ 2          The appellants, Otis and Kathryn Dungan (the Dungans), sought to intervene in the original case in February 2023, asserting that their property interests were adversely affected by permits issued by the City of Elmhurst that allowed construction of structures that they believed ran afoul of the restrictions in the prior order. They attached two proposed filings to their petition, demonstrating their intent to seek the substitution of new parties for the original plaintiffs and to enforce the terms of the prior judgments.

¶ 3          The trial court denied the Dungans' petition to intervene as of right and, alternatively, as a matter of discretion. We reverse and remand the cause to the trial court for additional proceedings.

¶ 4                                              I. BACKGROUND

¶ 5          The Dungans have owned property located at 270 West Eggleston Avenue, Elmhurst, Illinois, since 1995. The legal description of that property is:

"*LOT 3 OF HOFFMANN'S DIVISION* OF LOT 32 OF ARGYLE ADDITION

TO ELMHURST, A SUBDIVISION OF PART OF THE NORTHEAST

QUARTER OF SECTION 11, TOWNSHIP 39 NORTH, RANGE 11, EAST OF

2

THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO PLAT OF SAID

HOFFMANN'S SUBDIVISION RECORDED JUNE 30, 1924, IN BOOK 11 PLATS,

PAGE 52, AS DOCUMENT 179562, IN DUPAGE COUNTY, ILLINOIS." (Emphasis

added.)

¶ 6    The Dungans filed a petition to intervene in the Du Page County Circuit Court after the issuance of construction permits that allegedly violated building restrictions imposed in a 1971 judgment order that materially benefitted their property. The 1971 order resulted from a 1969 proposal by the four original plaintiffs, the Hatches and the Kings, to construct a 42-unit apartment complex on what is now called the Transite Parcel and the Wild Meadows Trace Parcel. After the City's denial of those plaintiffs' application to rezone the subject tract from single- to multiple-family usage, they sought declaratory judgment in August 1970, challenging the constitutionality of the zoning ordinance and naming the City as the sole defendant. On stipulated facts, the trial court entered a judgment for the Hatches and the Kings in May 1971, finding the City's zoning ordinance unconstitutional as applied. The order voided the zoning ordinance covering the tract, enjoined the City to authorize the permits necessary for construction of the proposed apartments, and declared that development valid subject to the following limitations:

"A. *No 'structure' (except for surfacing) shall be erected* on the following portion of the subject premises:

That portion lying West of the East line of Lot 4 in said Hoffman's [*sic*] Division of Lot 32 in Argyle Addition to Elmhurst extended south to the South line of said parcel,

3

*Until and unless the subject premises and Lots 2, 3, and 4* in said Hoffman's [*sic*] Division of Lot 32 in Argyle Addition to Elmhurst *shall be under common ownership*." (Emphases added.)

Thus, under the terms of the 1971 judgment, any construction beyond surfacing of the tract identified as the Transite Parcel plus 5.41 feet to its east was barred until that land, along with the neighboring Dungan Parcel and lots 2 and 4, were all held by a common owner.

¶ 7        The original plaintiffs transferred their interests in the site of the proposed apartment development in 1986. The proposed 42-unit complex was never built. The property was subsequently transferred several more times before title came to rest in NDB Trust Company of Illinois, as trustee, which recorded a Declaration of Condominium Ownership (Declaration) in 1989. That Declaration created a condominium for first phase development, gave control of the Transite Parcel and the Wild Meadows Trace Parcel to the Wild Meadows Trace Association (Association), and declared easements on the Transite Parcel for the benefit of the Association. The Association was to govern the condominium's common elements, including the easements over the Transite Parcel and the northern 48.42 feet of the Transite Parcel. A 6-unit residential complex was later built on the land previously approved for development.

¶ 8        In 1990, the City filed an unopposed motion to amend the 1971 judgment to permit the construction of an additional seven-townhouse building on the tract. That motion was granted, and the 1971 judgment was amended, retaining the prior building restrictions. The order was deemed an "Agreed Order to Amend Judgment Order" and provided, in pertinent part:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECLARED that the Judgment Order entered May 18, 1971 be, and is hereby, amended so that the maximum number and type of units permitted on the Subject Property shall be 13 townhouse units

4

as set forth on the site plan, a copy of which is attached hereto as Exhibit "A" and made part hereof, *provided that the conditions set forth in Subparagraphs A. and B., page 8 of the Judgment Order entered May 18, 1971 and as set forth hereinabove in Paragraph 4 shall remain in full force and effect*.

IT IS FURTHER ORDERED, ADJUDGED AND DECLARED that *the Judgment Order entered May 18, 1971 shall remain in full force and effect, except as modified herein; and that this Court shall retain* jurisdiction of the above entitled action for the purpose of affording the parties hereto, their successors and assigns, the opportunity at any future time to apply to this Court for such further orders and directions as may be necessary for the construction and implementation of the Judgment Order, as amended." (Emphases added.)

The site plan, referred to in the 1990 Agreed Order as "Exhibit A," is missing from the record and cannot be located. An unrelated downtown parking map is, however, attached to that order.

¶ 9          The diagram below shows the location of the relevant parcels.

5



¶ 10       In 2017, the Transite Parcel plus the 5.41 feet of land to its east, was transferred to Eggleston Street LLC., which also acquired the Abutting Parcel in 2018. On December 11, 2019, the record reveals that an attorney from the law firm representing Eggleston obtained part of the underlying court file, including two copies of the 1990 Agreed Order to Amend Judgment, despite not having filed an appearance or having a client that was a party to the case. On that same day, the 1990 agreed order was refiled, bearing an e-filing stamp from the Clerk's Office, but without any record of a notice of filing. Eggleston and a number of adjacent property owners subsequently filed a zoning application seeking conditional use permits from the City that would allow, in relevant part, the construction and operation of parking lots at 272 W. Eggleston Avenue and 276 W. Eggleston Avenue.

¶ 11       The City's Zoning and Planning Commission held public hearings on that zoning application on January 20, 2021, February 2, 2021, March 16, 2021, and April 20, 2021. During the February 2 hearing, the Dungans' attorney, Mark Daniel, appeared to oppose the zoning

application. In addition, attorney Daniel submitted to the Commission a 100-page document entitled "Elmhurst Neighbors United (Part One) Opposition to Morecci/Roberto's Application for Conditional Use" ("Opposition Document") prior to the March 16 hearing. Daniel appeared again at the March 16 zoning hearing and gave an oral presentation based on the Opposition Document and discussing the 1970 zoning case and the resulting 1971 and 1990 judgments.

¶ 12    In 2021, the City Council approved the zoning application and adopted zoning ordinance No. ZO-27-2021, authorizing the changes necessary to obtain the conditional use permits needed to construct the parking lots. The Dungans did not seek administrative review of zoning ordinance No. ZO-27-2021. In 2022, the City approved permits to build the parking lots on the land, subject to the Association's interest. Construction later began on a parking lot that included the addition of structures such as curbs, gutters, 20-foot tall light posts, fencing, and large stormwater conveyance and detention systems.

¶ 13    On February 2, 2023, the Dungans filed a petition to intervene in the 1970 action, alternatively asserting intervention as of right and by permission. The petition referred to the portion of the rezoned property owned by Eggleston as the "Transite Parcel" and made no mention of zoning ordinance ZO-27-2021. As owners of property (lot 3) named in the 1971 and 1990 orders, the Dungans argued that intervention was necessary to protect their interests in their land value, the avoidance of nuisance, and neighboring residents' welfare, health, and safety. They also sought to uphold the building restrictions imposed in the prior orders. They contended that the permitted structures violated those orders, which barred development of the Transite Parcel and the 5.41 feet east of the Transite Parcel with anything other than surfacing until the Dungan Parcel (lot 3), the Abutting Parcel, and other specified parcels were held in common

7

ownership. It is undisputed that the parcels have never had a common owner since the entry of the 1971 judgment.

¶ 14     The Dungans argued that the City's issuance of the construction permits ignored the restrictions in the earlier orders and demonstrated its abdication of its former role as the representative of neighboring landowners' interests during the proceedings that resulted in the 1971 and 1990 judgments. The Dungans asserted that the issuance of those permits, and Eggleston's subsequent construction of elements beyond surfacing, adversely impacted them and their property interests.

¶ 15     Attached to their petition, the Dungans included two pleadings that they intended to file if their petition to intervene were allowed. Because the Hatches and the Kings no longer possessed any interest in the subject land, with Eggleston owning both the Transite Parcel and the Abutting Parcel, the Dungans sought to substitute it, Wild Meadows Trace Townhome Association, Inc., and Wild Meadows Trace Condominium Association as the plaintiffs in the original case. The Dungans also sought an order to enforce the 1971 and 1990 judgments that precluded the construction of any structures other than surfacing on the Transite Parcel. Noting that the trial court had retained jurisdiction in both orders, they argued that, under *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 175 (2011), a court with continuing jurisdiction could hear an action seeking enforcement of a prior judgment as a collateral matter. Their proposed petition to enforce set forth the relevant chain of title, noted the absence of the common ownership required prior to any construction other than surfacing on the subject tract, and sought relief that would prevent Eggleston from making additional improvements.

¶ 16     In its 200-page response, the City contested factual matters pertaining to its new zoning ordinance (ZO-27-2021), which was necessary to issue the construction permits. It argued that

8

the petition to intervene was untimely and that the zoning change was permissible as a valid use of its legislative authority, despite the limitations set out in the 1971 and 1990 orders. The City also contended that the petition to intervene was, in effect, a challenge to the new zoning ordinance after the Dungans failed to seek administrative review of that change. In their reply, the Dungans denied that contention.

¶ 17 On April 13, 2023, the trial court denied the Dungans' petition to intervene as well as their subsequent request for leave to amend their petition, citing the rationale in its prior oral ruling. The written order stated, "Denial of the Petition to Intervene *** operates without prejudice to the initiation or continuation of litigation in a new lawsuit, provided, however, that this Order is final and appealable pursuant to Illinois Supreme Court Rule 301 and 303."

¶ 18 In its oral ruling, the trial court questioned whether the Dungans had any rights under the prior orders when the original plaintiffs and their successors in title were no longer parties to the case. The court also believed that allowing the Dungans to intervene and substitute party plaintiffs would greatly expand the issues presented beyond those considered by the court in 1971, 1990, and 2019, when the 1990 amended order was refiled. In its oral ruling, the trial court concluded that it did not "believe that it is necessary or desirable to allow the intervention in this case when the issues are so diametrically and wildly different than they were before the Court in those three previous years in which the judgment was entered or amended."

¶ 19 Without permission to intervene, the Dungans were barred from obtaining leave to file either their motion to substitute parties or their petition to enforce the prior judgments. Consequently, they filed a timely notice of appeal from the denial of their petition to intervene.

¶ 20                                     II. ANALYSIS

9

¶ 21    The Dungans raise two closely related issues on appeal: (1) whether the trial court erred in denying their petition to intervene as a matter of right (735 ILCS 5/2-408(a) (West 2022)); and (2) whether the trial court erred in denying their petition to intervene by permission (735 ILCS 5/2-408(b) (West 2022)). We review the denial of a petition to intervene for an abuse of the trial court's discretion. *A & R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 15 (stating that "[a] trial court's decision whether to allow intervention will not be reversed on appeal unless the court abused its discretion. [Citation.] It is always an abuse of discretion for a trial court to base a decision on an incorrect view of the law"). Due to the extensive overlap in the parties' arguments on the two issues, we will address them together.

¶ 22    "In determining whether to allow a petition to intervene, the circuit court 'must consider whether the petition to intervene is timely, whether the petitioner's interest is sufficient, and whether that interest is being adequately represented by someone else in the lawsuit.' " *Winders v. People*, 2015 IL App (3d) 140798, ¶ 13 (quoting *Soyland Power Co-operative, Inc. v. Illinois Power Co.*, 213 Ill. App. 3d 916, 918 (1991)). Intervention after judgment is entered may be allowed when the failure to intervene prior to the entry of judgment is justified or when intervention is the only way to protect the rights of the party seeking to intervene. *Id.* ¶ 14.

¶ 23    To support their petition, the Dungans rely on our supreme court's decision in *Anundson v. City of Chicago*, 44 Ill. 2d 491 (1970), a case not discussed by either the trial court or the City. The facts in *Anundson* strongly parallel those in the instant appeal. In 1962, the trial court found portions of a Chicago zoning ordinance unconstitutional as applied to land owned by the Anundsons. The judgment order granted them and their successors the right to construct a mixed-use building that adhered to specified parameters, including the provision of off-street parking, and expressly retained jurisdiction to address future enforcement issues.

10

¶ 24    Construction on the building began in 1964, shortly after the issuance of the necessary construction permits. After construction started, an adjoining landowner complained to the Chief Building Inspector of the City of Chicago about violations, and an order stopping all work was issued but later rescinded. The neighbor later sent a second letter to the Building Inspector that went unanswered. He then filed a formal complaint with City officials, challenging the absence of the required off-street parking in the new construction. After being informed that no corrective action was planned, the neighbor filed a petition in the circuit court in 1966 that was treated as a petition to intervene in the original action. The petition alleged that the construction violated the court's 1962 decree because it included an unauthorized meeting hall and roof garden and failed to provide for the mandated parking facilities. The complaint did not challenge the provisions of the 1962 degree or seek to alter it. The trial court subsequently dismissed the petition. *Anundson*, 44 Ill. 2d at 494-96. The appellate court reversed and remanded the cause with directions to enjoin construction until it complied with the restrictions in the 1962 decree. *Anundson*, 44 Ill. 2d at 494.

¶ 25    In upholding the appellate judgment, the supreme court rejected timeliness and jurisdictional arguments similar to those raised by the City here. *Anundson*, 44 Ill. 2d at 495. The court found that the neighboring landowner had a sufficient private interest to permit intervention, citing its holding in *Bredberg v. City of Wheaton*, 24 Ill. 2d 612 (1962). There, the court declared that adjoining landowners whose rights could be harmed were entitled to intervene because their interests exceeded those of the general public. In reaching that conclusion, the court recognized that "a municipality, concerned primarily with the maintaining of the municipality-wide zoning pattern, might inadvertently compromise or neglect the rights of adjoining landowners." *Anundson*, 44 Ill. 2d at 495-96. Under "the liberal provisions" of the

11

intervention statute, Illinois courts could act to protect the rights of adjoining landowners by permitting intervention. *Anundson*, 44 Ill. 2d at 496.

¶ 26 The court also rejected as overly narrow the claim that its retained jurisdiction extended "solely" to the original plaintiffs, barring any others from intervening. Rather, the original trial court had more broadly "retained jurisdiction to enforce its decree, and legal standing to enforce it was not limited to the plaintiffs." *Anundson*, 44 Ill. 2d at 496.

¶ 27 The analysis in *Anundson* governs the outcome of the instant case. The Dungans' alleged that they owned land adjoining the subject property and asserted that the construction of the parking lot, an alleged violation of the 1971 and 1990 orders, would damage their private interests. The uniqueness of their interest in the enforcement of those orders is further evinced by the orders' specific references to their lot. Although the City may have provided adequate representation of neighboring landowners' interests during the original proceedings and its subsequent unilateral pursuit of an amended order, its adoption of the new zoning ordinance and issuance of the conditional use permit were sufficient to establish its abdication of that role. See *Anundson*, 44 Ill. 2d at 495-96 (recognizing that "a municipality, concerned primarily with the maintaining of the municipality-wide zoning pattern, might inadvertently compromise or neglect the rights of adjoining landowners"). Here, as in *Anundson*, the trial court expressly retained jurisdiction to address issues involving the enforcement and construction of its prior orders. The proposed pleadings attached to the Dungans' petition to intervene demonstrated their intent to seek enforcement of those building restrictions. Thus, the facts in this case fall squarely within the scope of the discussion in *Anundson*.

¶ 28 Nonetheless, the City argues that the petition to intervene was untimely because the Dungans, who took title to their land in 1995, could have intervened long before 2023. The court

12

in *Anundson* rejected a nearly identical argument. In rejecting that claim, the *Anundson* court distinguished between potential litigants who sought to change or re-adjudicate the original judgment and those, like the neighboring landowner, who merely sought to enforce its terms "in accordance with the reservation of jurisdiction to grant such relief." *Anundson*, 44 Ill. 2d at 496-97. Both the Dungans and the petitioner in *Anundson* fall into the latter group.

¶ 29    *Anundson* also rejected the claim that the intervenor should have acted earlier by noting that the "adjoining landowners had no reason to suspect there would be any violation of the decree" during the nearly two years of "nonactivity" that followed the entry of the 1962 decree. *Anundson*, 44 Ill. 2d at 497. After the adjoining landowner observed violations of that order during the construction process, he promptly complained to the City and continued to pursue those claims for over a year. "When the [adjoining landowner] determined that his administrative complaints concerning the failure to provide parking facilities would be ineffectual," he properly sought judicial relief "without undue delay," making his petition to intervene timely. *Anundson*, 44 Ill. 2d at 497.

¶ 30    Here, the subject parcel remained vacant for decades after the Dungans took title to their land, giving them no reason to seek intervention. As soon as they became aware of activity that they believed violated the prior orders, the Dungans objected. After learning that Eggleston was seeking zoning changes and a conditional use permit that would allow construction of structures that could violate the prior orders, they strenuously objected before the Planning and Zoning Commission on multiple occasions. Their counsel appeared at multiple Commission hearings and submitted extensive written arguments and oral presentations in opposition to the proposed zoning changes and permit. Although those efforts were ultimately unsuccessful, they

13

demonstrate the affirmative steps that the Dungans took to protect their interests at the earliest possible opportunity.

¶ 31        Later, after the Dungans became aware of construction activity that they believed violated the court's prior orders, they again acted without delay by filing their petition to intervene. As in *Anundson*, 44 Ill. 2d at 497, the facts here demonstrate that the Dungans acted "without undue delay" after determining that their objections "would be ineffectual." Thus, their petition to intervene was timely filed.

¶ 32        Nonetheless, the City claims that the Dungans' attempt to intervene were actually a belated challenge to the new zoning ordinance and the construction permits issued to Eggleston after they failed to seek timely administrative review. We are not persuaded by that characterization. Administrative review actions and petitions to intervene involve entirely different issues, standards, and burdens of proof. They are not interchangeable. To be allowed to intervene, the Dungans needed only show that their petition was timely, their interest in the underlying matter was adequate, and their interests would not be represented in the absence of intervention. See *Winders*, 2015 IL App (3d) 140798, ¶ 13 (stating the showing necessary for intervention). In contrast, an administrative review proceeding would have been focused on the actions taken by the City and the Planning and Zoning Commission. We conclude that the Dungans' petition to intervene is not an improper attempt to overcome their failure to seek administrative review.

¶ 33        In the trial court's oral ruling, it expressed additional concerns underlying its decision to deny intervention, including the absence of any continued involvement by the original plaintiffs or their successors. That concern was dispelled by the Dungans' proposed substitution motion. In that motion, they asked to substitute new parties that possessed current interests in the property

14

for the original plaintiffs, who had long ago sold their interests. Thus, the grant of the substitution motion proposed by the Dungans would have resolved the trial court's concerns. In the absence of leave to intervene, however, the Dungans were unable to file that substitution motion.

¶ 34    The trial court also premised its denial of the petition to intervene on its belief that the issues the Dungans raised were "so diametrically and wildly different than they were before the Court in those three previous years in which the judgment was entered or amended" that the scope and complication of the original case would be greatly, and unnecessarily, expanded. Once again, the attachments to the Dungans' petition to intervene adequately addressed that concern. The attached copy of the Dungans' proposed enforcement action demonstrated their intent to seek only enforcement of the building restrictions in the prior orders. As in *Anundson*, 494 Ill. 2d at 496, they were not seeking to re-adjudicate or modify those orders. Because the trial court expressly retained jurisdiction to address future issues regarding the enforcement of its orders, the Dungans' proposed enforcement action properly invoked the court's continuing jurisdiction. Accordingly, allowing the Dungans to intervene would not have unnecessarily expanded or complicated the issues in the case, contrary to the trial court's oral finding. We hold that the facts of this case fall squarely within the scope of the rationale in *Anundson*.

¶ 35    In lieu of addressing the reasoning in *Anundson*, however, the City relies on the reasoning in *People ex rel. Hartigan v. Illinois Commerce Comm'n*, 243 Ill. App. 3d 544 (1993), *Seger v. Du Page County*, 58 Ill. App. 3d 858 (1978), and *Moran v. Commonwealth Edison Co.*, 74 Ill. App. 3d 964 (1979). After reviewing those decisions, we conclude that all of them are factually distinguishable and fail to support the City's contentions here.

15

¶ 36    In *Hartigan*, 243 Ill. App. 3d at 547, the court found that the reason underlying the petitioner's petition to intervene was at cross-purposes with the trial court's retained jurisdiction. The court had retained jurisdiction "to implement and administer a refund as outlined in its May 1986 stay order," but the petitioner sought intervention "for the limited purpose of clarifying and amending the RMO as to the tax consequences." Thus, the petitioner's intent to seek changes to the order were outside the scope of the court's retained jurisdiction. Here, in contrast, the intervenors sought to enforce the limitations in the court's prior orders, a purpose that falls completely within the scope of the trial court's retained jurisdiction.

¶ 37    Turning to *Seger*, the trial court had issued a declaratory judgment order permitting limited mining operations to be conducted until a specified date and had retained jurisdiction "to interpret and enforce all provisions." The order was later modified to extend the operation's termination date, with the apparent consent of the parties. *Seger*, 58 Ill. App. 3d at 859, 862. The intervenors were adjoining property owners who sought to join the case about 15 months later. They raised three arguments: (1) the trial court's modification was void because it lacked jurisdiction; (2) the mining operation did not adhere to the order's depth limitations; and (3) the operation violated the constitution because it "amount[ed] to a nuisance diminishing their property values." *Seger*, 58 Ill. App. 3d at 859-60. After determining that the order did not contain the limitations on mining depths asserted by the petitioners, the appellate court upheld the denial of the petition to intervene as untimely because it could have been filed during the pendency of the prior proceedings. *Seger*, 58 Ill. App. 3d at 861. Here, however, the intervenors could not have sought to intervene in the prior proceedings because they did not acquire title to their property until 1995, well after the completion of those proceedings.

¶ 38     The facts in *Moran* are even more disparate. There, the plaintiffs sought the equitable distribution of settlement proceeds from a contract dispute but never filed a petition to intervene. Instead, they contended that intervention was unnecessary because "they were at all times parties to the entire consolidated action and hence there was no need to file a petition to intervene." *Moran*, 74 Ill. App. 3d at 974. The court rejected that claim as unsupported by the record, concluding that the plaintiffs "were never parties in the breach of contract action wherein they alleged a settlement had been made" and "were attempting to do by indirection what they had been precluded from doing by direction." *Moran*, 74 Ill. App. 3d at 974. The reasoning in that case has no application to the instant appeal. Thus, the reasoning in all three of the cases cited by the City is inapt, and we decline to follow it.

¶ 39     Finally, the City attempts to argue that the construction restrictions in the 1971 and 1990 orders were void *ab initio* because they went beyond the scope of the original 1970 complaint. The trial court did not reach that argument in its ruling on the petition to intervene, instead denying the petition on other grounds. We decline to address it for the first time on appeal. If the defendants choose to raise that claim again on remand, the trial court may address it at that time.

¶ 40                                   III. CONCLUSION

¶ 41     Because *Anundson* governs the facts in this case, the trial court erred in denying the Dungans' petition to intervene. Accordingly, we reverse the denial of that petition and remand the cause to the Du Page County Circuit Court for additional proceedings.

¶ 42     Reversed and remanded.

17